The STATE of Ohio, Appellee and Cross–Appellant,

v.

DENUNE et al., Appellants and Cross–Appellees.

[Cite as *State v. Denune* (1992), 82 Ohio App.3d 497.]

Court of Appeals of Ohio,
Butler County.

Nos. CA90–07–128, CA90–07–129.

Decided Sept. 21, 1992.

498

500

*Lee I. Fisher*, Attorney General, *Brad L. Tammaro* and *Philip E. Haffenden*, Assistant Attorneys General, for appellee and cross-appellant.

*Michael T. Gmoser Co., L.P.A.*, and *Michael T. Gmoser*, for appellants and cross-appellees.

CASTLE, Judge.

Defendants-appellants, Harry C. Denune and Dixie Distributing, Inc., appeal their jury trial convictions before the Butler County Court of Common Pleas for illegal transportation, disposal, and storage of hazardous waste, failure to evaluate waste, failure to conduct analyses of waste, failure to prepare a uniform waste manifest, criminal endangering, and illegal operation of a hazardous waste facility.

Appellant Denune is the sole shareholder of Dixie Distributing, Inc. The evidence indicated that Denune made all of the substantive decisions regarding the operations of Dixie Distributing, Inc., including the decisions concerning the storage and disposal of corporate property.

On November 9, 1988, the Ohio Environmental Protection Agency ("OEPA") received an anonymous telephone call indicating that a tractor-trailer containing polychlorinated biphenyls ("PCBs") would be moved from the Dixie Distributing, Inc. warehouse in Springfield, Ohio. The caller said that the tractor-trailer would be moved from the warehouse immediately prior to a scheduled PCB inspection of the premises by OEPA at 9:00 a.m. on November 10, 1988.

OEPA investigators arrived at the Springfield warehouse at approximately 3:00 a.m. on November 10. At approximately 7:00 a.m., a tractor-trailer left the warehouse, and the investigators followed.

The tractor-trailer began traveling south on I–75. The driver exited the interstate at Route 63 and stopped the tractor-trailer at a restaurant for a brief period. The vehicle resumed its course down I–75 and proceeded to the Canal Auto and Truck Salvage Yard in Hamilton, Ohio. The padlocked trailer was parked next to six other trailers belonging to Dixie Distributing, Inc.

The OEPA investigators conducted a visual inspection of the six trailers that had already been present at the salvage yard. The trailers had holes through which the investigators could see fifty-five-gallon drums. The sev-

enth, newly arrived trailer, did not have holes through which its contents could be discerned.

The investigators contacted the caretaker of the salvage yard, Edward Sweeney, and informed him that they wished to inspect the newly arrived trailer. After contacting his supervisor, Sweeney told the investigators that they could search the trailer.

The investigators cut the padlock off of the trailer and searched its interior. There they found ten transformers containing PCBs and an unlabeled fifty-five-gallon drum. The lids of the transformers had been removed, and there were slight oil leakages from the seals. Samples were taken from the transformers and the drum.

Based on the evidence uncovered in the search of the first trailer, the OEPA investigators obtained a warrant to search the other six trailers. The search of the other trailers uncovered randomly stacked containers of paints, solvents, and similar materials, many of which were found to be hazardous pursuant to OEPA regulations. The containers were in poor condition, with many of them leaking due to the absence of lids or bung caps.

Appellants were indicted by the Butler County Grand Jury on September 11, 1989. Both appellants filed a motion to suppress the evidence obtained from the warrantless November 10, 1988 search as well as all evidence obtained as a result of that search. The Butler County Court of Common Pleas found that Denune had no standing to contest the legality of the searches, as the trailers were the property of Dixie Distributing, Inc. The court denied the motion of Dixie Distributing, Inc., concluding that OEPA's authority to inspect and investigate eliminated the requirement for a search warrant and that the search was not unreasonable.

A trial was held before the Butler County Court of Common Pleas, and the jury returned a verdict of guilty on the above-listed counts as to both appellants. Dixie Distributing, Inc. was assessed a fine of $10,000 on all counts except criminal endangering, for which it was assessed a $5,000 fine. The court further ordered that $3,500 of the fines on all counts except criminal endangering be suspended on the condition that Dixie Distributing, Inc. remove the trailers from the site and otherwise clear the premises to the satisfaction of OEPA. Dixie Distributing, Inc. was also placed on five years' probation.

Denune was sentenced to two years' imprisonment on all counts except criminal endangering, to be served concurrently. He was also assessed a fine of $10,000 on all counts except criminal endangering, for which he was assessed a $1,000 fine. The sentence of imprisonment was suspended on the condition that Denune effectuate the clean-up of the premises. The court

ordered that $3,500 of the fines on each count except criminal endangering be suspended on the same condition. Denune was also placed on five years' probation.

Further, both appellants were ordered to pay investigative fees, attorney fees, and court costs associated with the case. All sums assessed against Denune and Dixie Distributing, Inc. were made the parties' joint and several obligations. The judgments against appellants were entered on June 13, 1990.

Appellants bring the instant appeal, setting forth the following assignments of error:

"Assignment of Error No. 1:

"The trial court erred to the prejudice of defendants-appellants by overruling the motion of defendants-appellants to suppress all evidence searched for and seized on November 10, 1988 without a search warrant and admitting said evidence at trial.

"Assignment of Error No. 2:

"The trial court erred by permitting testimony concerning alleged past misconduct of defendant-appellant and the police action associated therewith.

"Assignment of Error No. 3:

"The trial court committed reversible error in denying defendants' motion for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure at the close of the state's case.

"Assignment of Error No. 4:

"The trial court committed reversible error by incorrectly instructing the jury with respect to the law to be applied by it in its deliberation."

The state, as cross-appellant, asserts the following assignment of error:

"The trial court erred by suspending the sentences of the defendants below the mandatory minimum sentences established by R.C. § 3734.99(A)."

In their first assignment of error, appellants claim that the trial court erred in denying the motion to suppress the evidence obtained from the November 10, 1988 warrantless search. The Fourth Amendment to the Constitution of the United States provides that "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." Searches conducted without a warrant "are per se unreasonable under the Fourth Amendment— subject to only a few specifically established and well-delineated exceptions."

*Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585; *State v. Taylor* (1991), 77 Ohio App.3d 223, 601 N.E.2d 541.

It is conceded that the search challenged in the motion to suppress was conducted without a warrant. Therefore, the primary issue under the first assignment of error is the applicability of various exceptions to the warrant requirement. As a preliminary matter, however, we must address several issues raised as to the manner in which the trial court conducted the suppression hearing. The first is the trial court's conclusion that Denune lacked standing to contest the search.

It is well settled that the protections of the Fourth Amendment relating to searches and seizures extend to commercial premises as well as homes. *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 312, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305, 311. However, in order to successfully challenge the admissibility of evidence on Fourth Amendment grounds, a defendant must establish that his own Fourth Amendment rights were violated. *Rakas v. Illinois* (1978), 439 U.S. 128, 133–134, 99 S.Ct. 421, 424–425, 58 L.Ed.2d 387, 394–395, rehearing denied (1979), 439 U.S. 1122, 19 S.Ct. 1035, 59 L.Ed.2d 83. Fourth Amendment rights may not be asserted vicariously. *Id.*

Though once expressed as a question of "standing," since *Rakas, supra,* the issue has been framed in terms of whether the defendant has a legitimate expectation of privacy in the searched property. When corporate property is searched or seized, an individual cannot assert the corporation's Fourth Amendment rights absent a showing that he had an independent privacy interest in the property. *United States v. Vicknair* (C.A.5, 1980), 610 F.2d 372, 394, certiorari denied (1980), 449 U.S. 823, 101 S.Ct. 83, 66 L.Ed.2d 25. Even a stockholder of a corporation must demonstrate an independent privacy interest in the searched property before he may prevail on Fourth Amendment grounds. *Id.*

In the case at bar, Denune did demonstrate an independent privacy interest in the searched property. As noted above, Denune was the sole shareholder of Dixie Distributing, Inc. The evidence indicated that he had sole control over the entire operation of the business. Numerous witnesses testified that no substantial decision affecting the business could be made without Denune's authorization. Most important to the instant case, Denune had complete control over the movement of all equipment and inventory, including the trailer that was the subject of the warrantless search. As the state itself asserted, the action taken nominally by the corporation in causing the trailer to be taken from Springfield to Hamilton was in fact the personal decision of Denune, who handled every detail of the transportation and storage of the trailer. In short, the state itself demonstrated that Dixie

Distributing, Inc. was virtually inseparable from the person of Harry Denune. Given this proof of Denune's complete control of the corporation, the state cannot be heard to assert that the identities are separable for purposes of Fourth Amendment protections. Accordingly, we will consider the issues argued under the first assignment of error as pertaining to both Denune and Dixie Distributing, Inc.

Next, appellants contend that the trial court improperly placed on them the burden of establishing a constitutional violation. The court concluded that OEPA's authority under R.C. Chapter 3734 to inspect and investigate eliminated the necessity for a warrant. It therefore placed on the defense the burden of establishing that the search was unreasonable, capricious, or arbitrary. It was the court's position that under R.C. Chapter 3734, OEPA has "carte blanche" authority to conduct searches for suspected hazardous waste violations. Appellant contends that the court's position was erroneous.

Appellants' argument is well taken. To challenge the admissibility of evidence obtained pursuant to a warrantless search or seizure, the defendant must demonstrate the lack of a warrant and raise the grounds upon which the validity of the search or seizure is being challenged so as to give the prosecution notice of the basis for the challenge. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph one of the syllabus. Once a defendant has demonstrated a warrantless search or seizure and adequately clarified that the ground upon which he challenges its legality is the lack of probable cause, the prosecutor bears the burden of proof, including the burden of going forward with evidence, on the issue of whether probable cause existed for the search or seizure. *Id.,* paragraph two of the syllabus.

Nothing in R.C. Chapter 3734 can be read to alter the placement of the burden of proof as set forth in *Xenia* or to eliminate the requirement for a search warrant. The prosecution cites R.C. 3734.07(C), 3734.10 and 3734.04 for the proposition that the regulatory scheme governing hazardous waste contemplates warrantless searches.

R.C. 3734.07(C) provides, in part, as follows:

" * * * [T]he director or his authorized representative, upon proper identification and upon stating the purpose and necessity of an inspection, may enter at reasonable times upon any private or public property, real or personal, to inspect or investigate, obtain samples, and examine or copy any records to determine compliance with this chapter * * * [T]he director or his authorized representative may apply for, and any judge of a court of record may issue, an appropriate search warrant necessary to achieve the purposes of this chapter within the court's territorial jurisdiction."

R.C. 3734.10 provides, in part, the following:

" * * * The director or any board of health may, upon request or upon their own initiative, investigate or make inquiries into any alleged violation or act of improper solid waste disposal, improper infectious waste transportation or treatment, or improper hazardous waste storage, transportation, treatment, or disposal."

R.C. 3734.04 provides, in part, as follows:

" * * * The director of environmental protection shall provide for the inspection of hazardous waste facilities and of generators and transporters of hazardous waste, issuance of permits, and enforcement of this chapter and of rules adopted thereunder * * *."

■ To the extent that these provisions address the authority of OEPA, they merely authorize the investigation, inspection, and prosecution of hazardous waste violations. No language in these sections or elsewhere in R.C. Chapter 3734 can be fairly read to abolish the warrant requirement for searches conducted by OEPA or to alter the allocation of the burden of proof in suppression hearings. In fact, R.C. 3734.07(C) specifically recognizes the existence of the warrant requirement. As the Ohio Supreme Court has recently stated, an agency of the state may not be used as a surrogate for the police to obviate the constitutional duty of obtaining a search warrant. *State v. Penn* (1991), 61 Ohio St.3d 720, 726, 576 N.E.2d 790, 794.

■ Thus, the trial court was bound to follow the rules regarding burden of proof as set forth in *Xenia*. The state argues that even under *Xenia*, appellants did not meet their burden of raising the issue of an illegal search. Specifically, it argues that the motion to suppress did not contain a sufficient factual basis to state a Fourth Amendment claim.

We find the state's argument to be without merit. Appellants' motions to suppress described the property that was searched, stated when it was searched, and averred that the search was conducted without a warrant. It further stated that the search was conducted without probable cause. These statements were sufficient to apprise the prosecution of the nature of the appellants' claims and to require the burden of going forward and the burden of persuasion to be placed on the prosecution. As the court placed the burden on the defense and held that the warrant requirement had been eliminated, we find that the court erred.

While the state claims that the trial court's errors were harmless, we do not agree. The conclusion that there was no requirement for a warrant, coupled with the improper placement of the burden of proof, clearly affected the

outcome of the suppression hearing. Therefore, appellants' first argument is found to be well taken.

■ We now turn to the state's argument that certain exceptions to the warrant requirement are applicable in the instant case. The state's first argument is that the warrantless search was proper pursuant to the "automobile exception" first formulated in *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. Under this exception, a warrantless search is valid where there is probable cause to believe a vehicle contains contraband and the search is conducted under exigent circumstances. *State v. Welch* (1985), 18 Ohio St.3d 88, 92, 18 OBR 124, 127, 480 N.E.2d 384, 387, certiorari denied (1985), 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 468; *State v. Davis* (Dec. 11, 1989), Clermont App. No. CA89–03–016, unreported, 1989 WL 149413.

■ We begin with the issue of probable cause. Under the automobile exception, probable cause must be based on objective facts that could justify the issuance of a warrant by a magistrate. *Welch, supra,* 18 Ohio St.3d at 92, 18 OBR at 127, 480 N.E.2d at 387. This determination of probable cause involves an examination of the totality of the circumstances to make a practical, common-sense decision whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates* (1983), 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548, rehearing denied (1983), 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453; *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus.

■ In the instant case, the search was not based on probable cause. The information possessed by the investigators concerning the trailer was primarily that conveyed by the anonymous caller. The caller said only that a trailer loaded with PCBs would be leaving the Springfield warehouse immediately before the scheduled OEPA inspection. While the state claims that the caller identified the specific trailer that would be moved from the facility, that claim is not supported by the record. Further, there is no indication that the caller told the investigators where the trailer would be taken. We cannot say that the mere fact of a trailer being moved from a large warehouse early in the morning is so unusual or indicative of criminal conduct as to give probable cause to search. Even if, as the state contends, the information contained in the tip was proven to be true, that information was not sufficiently specific to provide probable cause to search the trailer.

The state also points to the manner in which the trailer was transported in arguing the existence of probable cause. It points to the fact that the trailer

was heavily laden, as evidenced by its traveling slowly up hills on I–75. The state also notes that the truck traveled down a bumpy road and parked near a residential area, a river, and a wildlife refuge.

We fail to see how these circumstances give rise to a suspicion of criminal activity. The fact that the trailer was heavily laden gave no indication that it was laden with hazardous waste. Similarly, the fact that the trailer was parked in a sensitive environmental area has no bearing on the investigators' belief in the nature of its contents.

Finally, the state argues that the appearance of the fifty-five-gallon drums in the other six trailers tended to point to criminal activity on the part of appellants. The investigators questioned Sweeney as to what appellants had represented the contents of the six trailers to be. They learned from Sweeney that appellants had told Canal Truck and Auto that the trailers contained machine parts. However, the visual inspection of the six trailers revealed fifty-five-gallon drums, and not machine parts. The state argues that this incongruity, coupled with the investigators' knowledge that such drums are commonly used to transport hazardous waste, was evidence that criminal activity was taking place.

Once again, the state's argument is unpersuasive. Even with the asserted incongruity, the investigators had no concrete reason to believe that the drums in the six trailers contained hazardous waste. Further, assuming that the presence of the drums in the other six trailers was cause for some suspicion, it did not give the officers a reasonable basis upon which to search the newly arrived trailer.

In short, viewing the totality of the circumstances, we conclude that the investigators did not have probable cause to search the trailer pursuant to the automobile exception. Nonetheless, we will proceed to address the question of exigent circumstances.

The most frequently noted exigent circumstance relating to automobiles and other vehicles is mobility, but mobility is not the only such circumstance. *United States v. Licata* (C.A.9, 1985), 761 F.2d 537; *State v. Mills* (1992), 62 Ohio St.3d 357, 582 N.E.2d 972. Once again, it is necessary to view the totality of the circumstances to determine if any exigency justified the warrantless search.

The first circumstance relied upon by the state is the trailer's potential mobility. We find this potential mobility to be minimal. At the point when the trailer was searched, it had been disconnected from the tractor, and the tractor had been driven from the premises. As such, there is no showing of a likelihood that the trailer would be transported from the site.

The state rests more heavily on the potential danger that the suspected hazardous substances posed to the immediately surrounding environment. It notes that the specific material suspected of being in the trailer, PCBs, was known by the investigators to pose a serious threat to the environment, in that it is highly toxic and nondegradable. The state notes that the trailer was in poor condition and was situated on a flood plain, between a river and a residential area, and in close proximity to a wildlife refuge.

Despite these considerations, the state has failed to demonstrate the existence of exigent circumstances. While the evidence did indicate that the trailer was situated in a vulnerable environmental area, there was no showing that any harm to the environment was imminent. The investigators saw no leakage from the trailer or other evidence that any chemicals were in danger of being released. Though the exterior of the trailer was in poor condition, there was no indication that immediate action was necessary to prevent harm to the environment. The state has failed to demonstrate the existence of probable cause and that exigent circumstances prevented the investigators from obtaining a warrant. Therefore, the automobile exception to the warrant requirement is inapplicable.

The state next argues that the search of the trailer was valid pursuant to the consent exception to the warrant requirement. It is well settled that a warrantless search is valid if conducted with the consent of the party whose person or property is being searched. *Penn, supra.* Further, a warrantless entry and search does not violate the Fourth Amendment prohibition against unreasonable searches and seizures if the officers have obtained the consent of a third party with common authority over the property that is searched. *United States v. Matlock* (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242.

Finally, a warrantless entry is valid when based on the consent of a third party whom the police reasonably believe to possess authority over the property, but who in fact does not. *Illinois v. Rodriguez* (1990), 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148. There is no precise rule concerning the existence of this reasonable belief, as the issue of whether the basis for such authority exists "is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably." *Id.* at 186, 110 S.Ct. at 2800, 111 L.Ed.2d at 159.

In the instant case, the state contends that, since both Sweeney and his supervisor at Canal Auto and Truck authorized the investigators to search the trailer, no warrant was required. The state does not argue that the

employees had actual authority to consent to the search, but rather that the investigators reasonably believed that the employees possessed such authority.

The state's argument is not persuasive. The state places special emphasis on the fact that Sweeney contacted his supervisor before allowing the investigators to search the trailer. However, absent a reasonable belief that the supervisor had the authority to permit the search, that factor carries no weight.

Though the record indicates that Sweeney told the investigators that his supervisor did not object to the search, it reveals no affirmative claim that anyone at the salvage yard had the authority to permit the search or that they had ever exercised such authority. Also, the reasonability of the belief that the salvage yard employees could validly authorize the search is called into doubt by the fact that the trailer was locked, and no one at the yard possessed a key. As the method of entering the trailer was by breaking the padlock, the investigators' belief that Sweeney had control over the entire premises cannot be deemed reasonable. Under these circumstances, we conclude that the search was not valid under the consent exception to the warrant requirement.

The final asserted exception to the warrant requirement is that claimed to have been created by the above-cited statutory provisions enabling the director of OEPA to investigate and prosecute violations of R.C. Chapter 3734. As we have already stated, no such statutory exception has been created. Therefore, finding no exception to the warrant requirement applicable to the instant case, we hold that the warrantless search was improper under the Fourth Amendment and that the trial court erred in denying the motion to suppress.

The state further argues that any error on the part of the trial court in denying the motion to suppress as to the trailer searched on November 10, 1988 was harmless. It argues that, as the same materials were found in the six trailers searched pursuant to the warrant, the conviction was supported by ample evidence regardless of the admission of the evidence from the first trailer.

The state's argument is not well taken. It is well settled that both direct and indirect products of an unlawful search are subject to exclusion from evidence. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. The question to be resolved when it is claimed that evidence subsequently obtained is "tainted" or is a "fruit" of a prior illegality is whether the challenged evidence was " 'come at by exploitation of that

illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Id.* at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455.[1]

In the case at bar, the evidence obtained from the other six trailers was a direct result of the initial illegal search. Based on the record before us, we conclude that, absent the evidence obtained in the initial search, the state would not have had a sufficient basis upon which to obtain a warrant for the subsequent searches. As noted above, even though the OEPA investigators witnessed activities that they believed to be suspicious, and noted the presence of the fifty-five-gallon drums in the six trailers, their suspicion did not rise to the level of probable cause to search any of the trailers. Therefore, disregarding the evidence obtained from the initial illegal search, we find that there was an inadequate basis upon which to issue the warrant. As such, all evidence seized in the subsequent searches was subject to suppression.

As the evidence obtained as a result of the searches was required to be suppressed, we find that there is insufficient evidence remaining upon which to support the convictions. Absent evidence that the trailers contained hazardous waste or other hazardous substances, appellants must be discharged on all counts of the indictment, including criminal endangering. As such, the first assignment of error is sustained, the judgment of the trial court is reversed and appellants are ordered to be discharged.

Having ruled as we have on the first assignment of error, it is unnecessary to pass upon appellants' remaining assignments of error. Similarly, we need not reach the issue raised in the state's cross-appeal. See App.R. 12 as amended effective July 1, 1992.

The judgment of the trial court is reversed and the appellants are discharged.

*Judgment reversed.*

KOEHLER, P.J., concurs.

WILLIAM W. YOUNG, J., dissents.

LYLE W. CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty under Section 6(c), Article IV, Ohio Constitution.

WILLIAM W. YOUNG, Judge, dissenting.

In its opinion, the majority determined that probable cause and exigent circumstances did not exist to permit a warrantless search with respect to the

---

**1.** Although the issue of whether the subsequent searches were tainted is not explicitly argued in the briefs, it was raised in the motion to suppress and discussed in oral argument before this court.

first trailer. I vehemently disagree. I am convinced that the warrantless search was proper pursuant to the "automobile exception" first formulated in *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, wherein the United States Supreme Court expounded that a warrantless search is valid where there is probable cause to believe a vehicle contains contraband and the search is conducted under exigent circumstances.

With respect to the issue of probable cause, the facts, as set forth in the majority opinion and the record, plainly show that there was a fair probability that contraband or evidence of a crime would be found in the trailer in question. See *State v. George* (1989), 45 Ohio St.3d 325, 329, 544 N.E.2d 640, 644. The pertinent facts indicate that the Ohio Environmental Protection Agency ("OEPA") scheduled a polychlorinated biphenyls ("PCBs") inspection of Dixie Distributing's warehouse located in Springfield, Ohio on November 10, 1988. However, on November 9, 1988, the OEPA received an anonymous telephone call informing it that Dixie Distributing was planning to load PCB material onto a trailer at their Teledyne warehouse in Springfield in an attempt to move the PCB material before the scheduled inspection.

The observations of the OEPA at the Teledyne building confirmed the information that they received from the anonymous caller. Two hours before the inspection was scheduled to begin, an individual arrived at the Teledyne building and drove the trailer in question from the warehouse and onto I–75. The OEPA personnel observed that the trailer appeared to be heavily laden because it had trouble traveling uphill. The trailer finally stopped at the Canal Auto and Truck Salvage Yard in Hamilton, Ohio where it was parked next to six other trailers belonging to Dixie Distributing. The seven trailers were parked on a flood plain that was located between a river and a residential area, immediately next to and upstream from a wildlife refuge.

A visual inspection of the six trailers that had been present at the salvage yard showed that they had holes through which the investigators could see fifty-five-gallon drums. The newly arrived trailer did not have holes through which its contents could be discerned. William Palmer, an OEPA investigator, testified that through his experience and knowledge, the most common container for hazardous waste is the fifty-five-gallon drum.

The details of the anonymous caller having been corroborated by the OEPA personnel's observations of the trailer, coupled with William Palmer's experience and knowledge with respect to the transporting, storage and disposing of hazardous waste, clearly gave rise to probable cause to believe that the trailer contained contraband. See *United States v. Rodriguez* (C.A. 5, 1988), 835 F.2d 1090.

Moreover, we find that exigent circumstances in the instant action required the immediate inspection of the trailer in question. In the instant action, the probable existence of an inherently dangerous chemical compound (PCBs) in a vulnerable environmental area such as Hamilton's wildlife refuge and the possible release of the cancer-causing chemical compound to the environment created an exigency that required the immediate inspection of Dixie Distributing's trailer. As I have already indicated, there was probable cause that the trailer in question contained PCB contaminated oils. Thus, our next concern is whether these PCBs were a potential danger to the surrounding environment. Once again, the record clearly shows that such a danger did exist. OEPA personnel observed that the trailer appeared to be in poor shape as it was old and rusted with no labeling describing its contents. Moreover, since there was no information as to whether or not the contents of the trailer had been secured on its trip from Springfield to Hamilton, there was a possibility that the contents inside the trailer had tipped over or were leaking from its journey.

Finally, OEPA's concern with respect to the trailer was twofold. First, it was interested in discovering whether a hazardous waste violation existed. Second, and more important, it wanted to prevent the possible release of PCBs from the trailer to the vulnerable environmental area. Courts have previously found that the possibility of explosives in an automobile constituted an exigent circumstance sufficient to justify an immediate warrantless search. See *United States v. Al–Azzawy* (C.A.9, 1985), 784 F.2d 890; *United States v. Williams* (C.A.9, 1980), 626 F.2d 697.

Having found that there was probable cause to believe that the trailer contained contraband or other evidence, and that exigent circumstances necessitated a search of the trailer, I would have affirmed the trial court's decision holding that the facts justified the search of the trailer even without a warrant.

In finding that there was an inadequate basis upon which to issue a warrant with respect to the other six trailers, the majority quite simply did what is not within its power to do. The majority, in essence, conducted a *de novo* determination as to whether or not the affidavits in question contained sufficient probable cause upon which a judge could issue a search warrant.

In *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, the Ohio Supreme Court set forth the guidelines that a reviewing court must follow when conducting an after-the-fact scrutiny of an affidavit submitted in support of a search warrant. In *George*, the court explained at paragraph two of the syllabus that:

"In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a [judge], neither a trial court nor an appellate court should substitute its judgment for that of the [judge] by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the [judge] had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the [judge's] determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant."

I find it rather extraordinary and unfortunate that the majority would ignore the holding in *George* in order to reach a conclusion that I feel is wrong. By conducting a *de novo* determination as to whether or not the affidavits contained sufficient probable cause upon which a court could issue a search warrant, the majority substituted its judgment for that of Judge Elliott. In my view, there was without question a sufficient basis upon which to issue a warrant, even after disregarding the evidence obtained from the initial, what the majority claims to be illegal, search. The affidavits supplied to Judge Elliott clearly showed that there was probable cause to believe that the six trailers in question contained hazardous wastes.

Contained in the affidavits was the testimony of an investigator with the Environmental Enforcement Section of the Office of the Ohio Attorney General, Brance Johnson, and the testimony of an Environmental Engineer with the Ohio Environmental Protection Agency, Paul Pardi. In their affidavits, both stated that they were informed by OEPA personnel on November 14, 1988 that six box trailers with drummed materials were located at Canal Auto and Truck Salvage Yard in Hamilton, Ohio. Pardi stated in his affidavit that based upon his experience as a hazardous waste inspector, a partial inspection of the six trailers disclosed the presence of fifty-five-gallon drums, tanks, cans and other types of containers which contained what appeared to be waste-type materials such as waste oils, paints, and solvent-type substances. He further stated that several containers of what appeared to be corrosive-type waste were in a deteriorated condition and leaking. Finally, Pardi stated that these types of wastes are incompatible and that the commingling of these wastes could result in the generation of toxic fumes, fire and/or explosion.

Based upon the foregoing evidence, I once again reiterate that there was sufficient evidence in the affidavits, disregarding the so-called tainted evidence, to find that Judge Elliott had a substantial basis for concluding that probable cause to search the six trailers existed. See *Illinois v. Gates* (1983),

462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. Thus, unlike my colleagues, I would have determined the original search to be proper and deferred to the judge's determination of probable cause and affirmed the trial court's judgment.