The STATE of Ohio, Appellee,

v.

FELICIANO, Appellant.

[Cite as *State v. Feliciano* (1996), 115 Ohio App.3d 646.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 95CA006278.

Decided Nov. 20, 1996.

648

*Gregory A. White*, Lorain County Prosecuting Attorney, for appellee.

*Daniel Wightman*, for appellant.

DICKINSON, Judge.

Defendant Angel Mendez Feliciano has appealed from his convictions in the Lorain County Common Pleas Court on three counts of engaging in a pattern of corrupt activity, one count of conspiracy to engage in a pattern of corrupt activity, five counts of gambling, and one count of operating a gambling house. He has argued that (1) his convictions on the three counts of engaging in a pattern of corrupt activity were not supported by sufficient evidence and were against the manifest weight of the evidence; (2) the jury's finding that he had a firearm on or about his person or under his control during the commission of engaging in a pattern of corrupt activity was not supported by sufficient evidence and was against the manifest weight of the evidence; (3) the trial court incorrectly instructed the jury on "legally inadequate predicate offenses"; (4) the indictment was legally insufficient because it failed to specify what acts allegedly constituted the collection of an unlawful debt; (5) his conviction of conspiracy to engage in a pattern of corrupt activity was not supported by sufficient evidence and was against the manifest weight of the evidence; and (6) the trial court incorrectly denied his motion to suppress evidence seized from his pickup truck and residence.[1]

This court affirms the judgment of the trial court because (1) defendant's convictions on the three counts of engaging in a pattern of corrupt activity were supported by sufficient evidence and were not against the manifest weight of the evidence; (2) the jury's finding against defendant on the firearm specification was supported by sufficient evidence and was not against the manifest weight of the evidence; (3) the instruction on the predicate acts was not plain error; (4) the indictment against defendant adequately apprised him of the charges against him; (5) defendant's conviction of conspiracy to engage in a pattern of corrupt activity was supported by sufficient evidence and was not against the manifest weight of the evidence; and (6) the trial court did not err by denying defendant's motion to suppress evidence seized during the search of his pickup truck and residence.

---

1. Defendant's assignments of error have been consolidated for ease of discussion.

I

Defendant and others were suspected of operating a numbers game in Lorain County. Beginning in 1994, officers of the Lorain Police Department conducted extensive surveillance of two businesses owned by defendant, the Royal Corona Lounge and Angel's Tobacco Shop. The police believed that those businesses were used as fronts for the gambling operation. Over a period of months, the officers observed various individuals arrive at both locations each evening between 6:30 and 7:30 p.m. to drop off what the police suspected were betting slips for that day. The police were able to identify these people from the license plate numbers on their vehicles and from videotapes of them walking to and from their vehicles. The officers also observed defendant and four others, Teresa Gonzalez, Victor Castro Rosario, Amador Rosas, Sr., and William Acevedo, pick up the envelopes and then meet at different locations each evening from approximately 7:30 p.m. to 8:30 p.m. The state alleged that these five individuals were the leaders of the gambling operation.

In addition to watching defendant's businesses, each day the police searched the trash outside defendant's residence, Teresa Gonzalez's residence, and the Royal Corona Lounge. They found betting slips with three-digit numbers and amounts bet, records of winning numbers and payouts, and Pick–Three Ohio Lottery tickets.[2] By comparing the winning numbers in the Ohio Lottery game and the winning numbers indicated in the organization's records, the police determined that people who placed bets on the three-digit number that was pulled in the Ohio Lottery drawing on a particular date won a certain amount of money for that day's bet. Also, the police were able to match the names or initials of some of the individuals on the betting slips with people who had been seen dropping off envelopes at the Royal Corona Lounge and Angel's Tobacco Shop. The betting slips indicated that the individuals whose names or initials were on the slips kept twenty percent of the total amount bet. This fact led the police to believe that the individuals who delivered the betting slips were "runners" for the organization who received a commission for placing bets for others.

Pursuant to a warrant, the police, on March 28, 1995, searched the Royal Corona Lounge, Angel's Tobacco Shop, William Acevedo's residence, Teresa Gonzalez's residence, and defendant's residence. They confiscated from the Royal Corona Lounge blank betting books and betting slips that had been dropped through the mail slot in the back door, from the tobacco shop betting

---

**2.** According to the state, if, on a particular day, a large number of bettors chose the same three-digit number, the organization would purchase Ohio Lottery tickets for that same number in order to help cover potential winnings.

slips and cash, from defendant's residence $1.6 million in cash and boxes of blank betting books, and from Teresa Gonzalez's house $140,000 in cash and betting slips. The majority of betting slips that were confiscated were dated March 28, 1995, the date of the search. The police also searched a pickup truck of defendant's that was parked near the Royal Corona Lounge. They found $20,000 in cash, betting slips, and a loaded revolver. Based on evidence seized during the execution of the warrants, the police estimated that the gambling operation had a gross annual income of $3,425,343 and annual profits of $896,069.72.

On April 5, 1995, defendant was charged by a superseding indictment with three counts of engaging in a pattern of corrupt activity, violations of R.C. 2923.32(A)(1), (A)(2), and (A)(3), one count of conspiracy to engage in a pattern of corrupt activity, a violation of R.C. 2923.01(A)(1) and (A)(2), five counts of gambling, violations of R.C. 2915.02(A)(2), one count of operating a gambling house, a violation of R.C. 2915.03(A)(1), and one count of carrying a concealed weapon, a violation of R.C. 2923.12. The first count of engaging in a pattern of corrupt activity included a specification that defendant had a firearm on or about his person or under his control while committing the offense.

The case was tried to a jury beginning August 29, 1995.[3] On September 8, 1995, the jury found defendant guilty of three counts of engaging in a pattern of corrupt activity, one count of conspiracy to engage in a pattern of corrupt activity, five counts of gambling, and one count of operating a gambling house. The jury found him not guilty of carrying a concealed weapon. The jury also specifically determined that defendant had a firearm on or about his person or under his control during the commission of the first count of engaging in a pattern of corrupt activity. Defendant timely appealed to this court.

## II

### A

■ Defendant's first assignment of error is that his convictions on the three counts of engaging in a pattern of corrupt activity were not supported by sufficient evidence and were against the manifest weight of the evidence. Defendant moved the trial court for acquittal, pursuant to Crim.R. 29, at the close of the state's case and again at the close of all the evidence. Crim.R. 29 provides that a motion for acquittal should be granted if the evidence before a trial court is insufficient to sustain a conviction. To determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:

---

3. Defendant was tried along with co-defendants Thelma Jones and Pablo Perez.

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. When deciding whether a conviction is against the manifest weight of the evidence:

"[A]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010–1011.

Defendant was charged with separate violations of R.C. 2923.32(A)(1), (A)(2), and (A)(3). To obtain a conviction under any of those sections, the state was required to prove either "a pattern of corrupt activity" or "the collection of an unlawful debt." The first prong of defendant's argument in support of this assignment of error is that the state failed to prove "a pattern of corrupt activity."

"Corrupt activity" is defined at R.C. 2923.31(I) as "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" any of a number of types of criminal activities, including gambling and operating a gambling house. The phrase "pattern of corrupt activity" is defined at R.C. 2923.31(E) as two or more incidents of corrupt activity, at least one of which must be a felony.

Defendant has asserted that the state failed to prove a felony as an underlying "corrupt activity." The indictment against defendant specified underlying "corrupt activities" of gambling, a violation of R.C. 2915.02(A), and operating a gambling house, a violation of R.C. 2915.03(A). These offenses are misdemeanors unless the defendant was previously convicted of a gambling offense. R.C. 2915.02(F) and 2915.03(B). Defendant has argued that, since the state did not introduce evidence that he had a prior gambling conviction, any violations of R.C. 2915.02(A) or 2915.03(A) by him were misdemeanors and, therefore, could not serve as a basis for establishing a "pattern of corrupt activity."

Defendant is correct that, to the extent that none of his alleged predicate acts was a felony, he could not have been convicted of violating R.C. 2923.32(A)(1) or (A)(2) for having himself committed acts that constituted a "pattern of corrupt

activity."[4]  See *State v. Morgan* (1994), 71 Ohio St.3d 178, 642 N.E.2d 1090.  He could, however, have been convicted of violating R.C. 2923.32(A)(3) because that section only requires that a defendant knowingly receive "proceeds derived, directly or indirectly, from a pattern of corrupt activity or the collection of any unlawful debt * * *."  A defendant can be convicted under that statute even if he did not participate in the "pattern of corrupt activity" or the collection of an unlawful debt and, consequently, for purposes of that statute, it is irrelevant whether the defendant committed at least one predicate act that constituted a felony.  Since the state has conceded, however, that defendant could not have been convicted of violating R.C. 2923.32(A)(1), (A)(2), or (A)(3) because he did not commit a predicate act that was a felony, this court will assume that defendant's first argument is correct.

Defendant has further argued that the state failed to prove the alternative basis of criminal liability under the three sections at issue, that the alleged enterprise was involved in the collection of an unlawful debt.  "Unlawful debt" is defined, in part, at R.C. 2923.31(L) as "any money or other thing of value constituting principal or interest of a debt that is legally unenforceable in this state in whole or in part because the debt was incurred or contracted in violation of any federal or state law relating to the business of gambling activity * * *."  Defendant's argument has two prongs: (1) there was no evidence that persons who were not members of the enterprise owed money to it, and (2) there was no evidence that the enterprise "induced" repayment of an unlawful debt.

As for the first prong of defendant's argument, he has asserted that, in order for the state to prove that the alleged enterprise collected an unlawful debt, it had to introduce evidence that persons who were not part of the enterprise owed money to it.  Otherwise, according to defendant, the alleged collection would simply have been the movement of money within the enterprise itself.  For support, he has relied on the Second Circuit United States Court of Appeals' interpretation of "collection of unlawful debt" as it is used in the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Section 1961(6), Title 18, U.S.Code.  In *United States v. Giovanelli* (C.A.2, 1991), 945 F.2d 479, the Second Circuit considered the defendants' argument that, when money is transferred among persons inside an organization, it is not the collection of an unlawful debt. The court generally agreed with the defendants' proposition that the "transmission of money within an organization, regardless of that organization's legality, does not constitute collection of a debt."  *Id.* at 490.  It concluded, however, that, even though the debtors in that case were "runners" for the organization, there

---

4.  The state also did not present any evidence that defendant solicited, coerced, or intimidated another to commit the predicate acts.  See R.C. 2923.31(I).

was sufficient evidence that the enterprise collected unlawful debts from them based on the fact that they had also placed their own bets with the organization:

"Indeed, if [the debtors] were only runners, we would have no difficulty rejecting the jury's finding. However, reviewing the evidence 'in the light most favorable to the government, and construing all permissible inferences in its favor,' *United States v. Puzzo*, 928 F.2d 1356, 1357 (2d Cir.1991), we are satisfied that the jury was entitled to find that, although employed as runners, [two of the debtors] personally placed wagers with the defendants' gambling business and that the resulting debts were collected by the defendants. * * * " *Id.* at 490.

Defendant has argued that, unlike in the *Giovanelli* case, there was no evidence presented that any of the runners in this case placed bets. The state introduced evidence that tended to show money owed by five individuals to the leaders of the gambling operation: Thelma Jones, Pablo Perez, Gilbert Shields, Joseph Moon, and Judy Thompson. Of these individuals, Thelma Jones, Pablo Perez, Joseph Moon, and Judy Thompson were listed in the indictment against defendant as being members of the enterprise. In addition, Thelma Jones and Pablo Perez were codefendants at defendant's trial. Gilbert Shields, although not listed in the indictment as a member of the enterprise, was alleged at trial to have been a "runner" for the organization. The state presented evidence that these five individuals failed to turn over to the leaders of the organization the full value of bets made by third parties. It did not, however, introduce any evidence in its case-in-chief that these five individuals also had placed bets on their own behalf. Thelma Jones, one of the codefendants at defendant's trial, testified as a defense witness in her own case that she was not a runner. According to her, she placed bets only for herself. This evidence cannot be considered, however, in determining whether the trial court incorrectly denied defendant's motion for acquittal at the close of the state's case. It will be considered in connection with defendant's manifest weight argument.

Although there was no evidence in the state's case-in-chief that runners were also placing their own bets, there was sufficient evidence for the jury to have found that bettors who were not members of the enterprise were extended credit. Joseph Moon, who testified in the state's case-in-chief, explained that monies owed to the leaders of the enterprise were frequently subtracted from future winnings. There was also evidence that runners would add money owed the leaders of the enterprise to the amount of money bet on a later date. In the case of debts that were satisfied by subtracting their amounts from future winnings, it would be reasonable to infer that, if the leaders of the enterprise satisfied the debt in this manner, it was the bettors, not the runners, who owed them money. After all, it was the bettors, not the runners, who were entitled to any gambling

winnings. The runners received their commission from the amount bet, not from a share of the winnings.

Since there was evidence in the state's case-in-chief that bettors owed money to the organization, the trial court correctly denied defendant's motion for acquittal at the close of the state's case. As for defendant's manifest weight argument, the jury could have reasonably concluded, based on Moon's testimony and Jones's assertion that she only placed her own bets, that individuals not connected to the enterprise were betting on credit.

■ The second part of defendant's argument is that there was no evidence presented that the enterprise "induced" a debtor to repay a debt. Defendant has asserted that the mere receipt of payment for a gambling bet is not collection of a debt within the meaning of R.C. 2923.32. The state introduced evidence that bettors were extended credit and that the resulting debt was subtracted from winnings. While the Ohio statute does not specifically define the term "collection," this court concludes that the deduction of a debt from future winnings is collection of a debt within the meaning of that statute.

Defendant's convictions for engaging in a pattern of a corrupt activity were supported by sufficient evidence and were not against the manifest weight of the evidence. His first assignment of error is overruled.

B

■ Defendant's second assignment of error is that the jury's finding on the firearm specification was not supported by sufficient evidence and was against the manifest weight of the evidence. Count One of the indictment against defendant included a specification that he had a firearm on or about his person or under his control while committing the underlying offense. A defendant who has a firearm under those circumstances is subject, pursuant to R.C. 2929.71(A)(2), to a three-year term of actual incarceration. By Count One, defendant was charged with engaging in a pattern of corrupt activity, a violation of R.C. 2923.32(A)(1). Defendant has argued that the state did not establish that he had a firearm on or about his person or under his control while committing that offense. According to defendant, the state had to prove that he was in the process of collecting an unlawful debt when he had the firearm in his possession. This is incorrect. Defendant could be convicted of violating R.C. 2923.32(A)(1) even if he never collected an unlawful debt himself. It was, therefore, unnecessary for the state to establish that he was involved in that activity when he had a firearm in his possession. The jury's finding against defendant on the firearm specification was supported by sufficient evidence and was not against the manifest weight of the evidence. Defendant's second assignment of error is overruled.

## C

■ Defendant's third assignment of error is that the trial court incorrectly instructed the jury on "legally inadequate predicate offenses" for the three counts of engaging in a pattern of corrupt activity. The three counts in the indictment specified that the predicate offenses were gambling and operating a gambling house. These offenses are misdemeanors unless the defendant was previously convicted of a gambling offense. R.C. 2915.02(F) and 2915.03(B). Defendant has argued that the trial court should not have instructed the jury on the predicate acts alleged in the indictment because he did not have prior gambling convictions that would have elevated the offenses to felonies and, therefore, even if he did commit the acts, it would not have constituted a "pattern of corrupt activity." He has urged this court to reverse his convictions on all three counts of engaging in a pattern of corrupt activity because, according to him, it is impossible to determine whether the jury convicted him of those offenses based on his commission of the predicate acts or on his association with an enterprise that collected an unlawful debt.

■ Defendant did not object to the trial court's instruction on the predicate acts and thus waived any right to assert it as error on appeal except to the extent that it constituted plain error. *State v. Loza* (1994), 71 Ohio St.3d 61, 80, 641 N.E.2d 1082, 1103–1104. "Plain error" exists when it can be said that, but for the error, the outcome of the trial would clearly have been different. *Id.*

According to defendant, he could have been convicted of violating R.C. 2923.32(A)(1), (A)(2), and (A)(3) only if the state established that his commission of the predicate acts constituted a "pattern of corrupt activity." R.C. 2923.32(A)(3), however, only requires the state to prove that a defendant knowingly received "proceeds derived, directly or indirectly from a pattern of corrupt activity or the collection of an unlawful debt * * *." Contrary to defendant's assertions, that statute does not require that the defendant have committed the acts that are the basis for the "pattern of corrupt activity." Consequently, under that statute, it was irrelevant whether defendant had any prior gambling convictions that would have elevated the predicate acts to felonies as long as some member of the enterprise had such a prior conviction.

Furthermore, to the extent that R.C. 2923.32(A)(1) and (A)(2) require that a defendant have committed the underlying acts, the jury, based on the instructions given to it by the trial court, could not have concluded that defendant's acts constituted a "pattern of corrupt activity." It is presumed that a jury will follow the instructions given to it by a trial court. *Loza*, 71 Ohio St.3d at 75, 641 N.E.2d at 1100. The trial court instructed the jury that it could find that a "pattern of corrupt activity" existed if at least one of the predicate acts was a felony. It further instructed the jury that the predicate acts of gambling and operating a

gambling house were felonies only if the offender was convicted of a prior gambling offense. In view of that instruction, the jury could not have found that a "pattern of corrupt activity" had been committed based on defendant's commission of the predicate acts. The instruction, therefore, did not amount to plain error. Defendant's third assignment of error is overruled.

## D

Defendant's fourth assignment of error is that the indictment against him was insufficient because it did not "particularize [the] predicate acts of debt collection." According to him, the indictment for each alleged "unlawful debt" should have specified the amount of the debt, the name of the debtor, and the date of collection of the debt. He has argued that this court should reverse his convictions on the three counts of engaging in a pattern of corrupt activity, including the firearm specification, and on the one count of conspiracy to engage in a pattern of corrupt activity because he could not prepare a defense against the charge of "collection of an unlawful debt" without that information.[5]

The purpose of an indictment is to afford a defendant notice of the charges against him. *State v. Burkitt* (1993), 89 Ohio App.3d 214, 224, 624 N.E.2d 210, 216–217. "An indictment is sufficient if it contains the elements of the offense charged, fairly informs the defendant what charge he must be prepared to meet, and enables the accused to plead acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Cauble* (C.A.5, 1983), 706 F.2d 1322, 1333.

By the indictment, defendant was charged with three counts of engaging in a pattern of corrupt activity and one count of conspiracy to engage in a pattern of corrupt activity. With respect to the "collection of an unlawful debt" element of those offenses, the indictment tracked the language of R.C. 2923.32(A). Although the nature of the "unlawful debt" was not elaborated in the manner that defendant has contended was necessary, that was not required to put defendant on notice of the charges against him. Defendant's fourth assignment of error is overruled.

## E

Defendant's fifth assignment of error is that his conviction of conspiracy to engage in a pattern of corrupt activity was not supported by sufficient evidence

---

5. Defendant has also argued that he was prejudiced by the state's failure to respond to his request for a bill of particulars on the charge of "collection of an unlawful debt." Defendant, however, withdrew his request for a bill of particulars before the state had an opportunity to respond. Since defendant withdrew his request, he cannot assert on appeal that he was prejudiced by the state's failure to respond to it.

and was against the manifest weight of the evidence. Defendant moved the trial court for acquittal on the conspiracy count at the close of the state's case and at the close of all the evidence.

R.C. 2923.01 (conspiracy) provides:

"(A) No person, with purpose to commit or to promote or facilitate the commission of * * * engaging in a pattern of corrupt activity, * * * shall do either of the following:

"(1) With another person or persons, plan or aid in planning the commission of any such offense;

"(2) Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any such offense."

By the indictment against him, defendant was charged with conspiracy to engage in a pattern of corrupt activity, a violation of R.C. 2923.01(A)(1) and (A)(2). He has contended that the state failed to prove that he agreed to commit predicate acts that would have been sufficient to establish a "pattern of corrupt activity." The indictment against defendant specified that the predicate offenses were gambling and operating a gambling house. These offenses are misdemeanors unless the defendant was previously convicted of a gambling offense. R.C. 2915.02(F) and 2915.03(B). The state presented evidence that five alleged members of the enterprise, Gunther Barnes, Joseph Moon, James Montgomery, Joseph Cook, and Victor Castro Rosario, had prior gambling convictions that would have elevated their commission of the predicate acts to a felony. The state did not, however, present any evidence that defendant had any prior gambling convictions. Defendant has argued that he could not have conspired to engage in a pattern of corrupt activity since the state did not prove that at least one of the predicate acts he agreed to commit would have been a felony.

For support, defendant has relied on *United States v. Ruggiero* (C.A.2, 1984), 726 F.2d 913, a case that addressed what was necessary to sustain a conviction of conspiracy to participate in a pattern of racketeering activity, a violation of Section 1962(d), Title 18, U.S.Code. In that case, the Second Circuit United States Court of Appeals held that the government could not meet its burden of proof by simply presenting evidence that the defendant conspired with others to engage in a pattern of racketeering activity consisting of predicate acts committed by others. *Id.* at 921. Rather, it held that, to sustain a conspiracy conviction, the government had to prove that the defendant agreed to commit predicate acts that would have been sufficient to satisfy the definition of "pattern of racketeering." *Id.* at 921. Since Section 1961(5), Title 18, U.S.Code required that a "pattern of racketeering" consist of at least two acts of racketeering, the court

held that the government had to prove that the defendant agreed to commit two or more predicate acts. *Id.* at 921.

The First Circuit United States Court of Appeals has also adopted this view. See *United States v. Winter* (C.A.1, 1981), 663 F.2d 1120. The majority of federal circuit courts that have addressed the issue, however, have taken the opposite view and concluded that, to sustain a conspiracy conviction, the government need only prove that the defendant agreed that another person would commit two acts of racketeering activity. See *United States v. Marmolejo* (C.A.5, 1996), 86 F.3d 404; *United States v. Pryba* (C.A.4, 1990), 900 F.2d 748; *United States v. Leisure* (C.A.8, 1988), 844 F.2d 1347; *United States v. Neapolitan* (C.A.7, 1986), 791 F.2d 489; *United States v. Joseph* (C.A.6, 1986), 781 F.2d 549; *United States v. Adams* (C.A.3, 1985), 759 F.2d 1099; *United States v. Tille* (C.A.9, 1984), 729 F.2d 615; *United States v. Carter* (C.A.11, 1984), 721 F.2d 1514. As the Seventh Circuit explained in *Neapolitan, supra:*

"Section 1962(d) explicitly prohibits conspiracies to violate RICO. The natural reading of that phrase is the proscription of any agreement the object of which is the conducting of or participation in the affairs of an enterprise through a pattern of racketeering activity. In other words, rather than creating a new law of conspiracy, RICO created a new objective for traditional conspiracy law—a violation of sections 1962(a), (b), or (c). Requiring an agreement personally to commit two predicate acts would establish a new form of conspiring in contradistinction to section 1962(d)'s base in traditional conspiracy law. Under the defendants' theory section 1962(d) would require not only an agreement to join in the conspiracy's objective, a RICO violation, but also an agreement to personally commit the underlying offense through the commission of two predicate acts. This involves a degree in the involvement in the affairs of the conspiracy that is not required in any other type of conspiracy, where agreeing to a prescribed objective is sufficient." (Citations omitted.) *Id.,* 791 F.2d at 497–498.

This court agrees with the reasoning of the majority of the federal circuit courts of appeal. Consequently, to support a conviction of conspiracy to engage in a pattern of corrupt activity, the state does not have to prove that a defendant agreed to commit predicate acts himself that would have been sufficient to establish a "pattern of corrupt activity." Rather, the state can meet its burden by presenting evidence that the defendant agreed that others would commit the acts that would establish the "pattern of corrupt activity." In this case, so long as at least one of the persons who entered into an agreement with defendant to commit the predicate acts of gambling and operating a gambling house had a prior gambling conviction, his agreement with defendant to commit those acts

was enough to establish a conspiracy to engage in a pattern of corrupt activity.[6]

Defendant's conspiracy conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. His fifth assignment of error is overruled.

## F

Defendant's sixth assignment of error is that the trial court incorrectly denied his motion to suppress evidence seized from his pickup truck and residence. First, he has argued that the trial court should have suppressed evidence seized from his house because the information used to establish probable cause for the warrant authorizing the search was fruit of an unlawful search and seizure of trash placed outside of his home. During the course of its investigation of defendant, the Lorain Police Department seized trash that was placed on the tree lawn in front of his house for collection by a private trash hauler. Evidence obtained from the trash was used, in part, to obtain a search warrant for defendant's residence.

Defendant moved the trial court to suppress evidence seized during the search of his home because it was fruit of an illegal search of his trash. The trial court denied the motion to suppress on July 25, 1995. It found that defendant did not have a reasonable expectation of privacy in his trash.

The United States Supreme Court has recognized that there is no reasonable expectation of privacy in garbage left for trash collection in an area which is susceptible to open inspection:

"[W]e conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that * * * garbage * * * left on or at the side of a public street [is] readily accessible to animals, children, scavengers, snoops, and other members of the public. Moreover, respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage 'in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it' * * *, respondents could have had no reasonable expectation of privacy in the inculpatory items that they discard-

---

**6.** Since R.C. 2923.31(E) requires that a "pattern of corrupt activity" consist of "two or more incidents of corrupt activity," all the state had to prove was that defendant entered into an agreement with another person that that person would commit two predicate acts, one of which was a felony.

ed." (Citations omitted.) *California v. Greenwood* (1988), 486 U.S. 35, 40–41, 108 S.Ct. 1625, 1628–1629, 100 L.Ed.2d 30, 36–37.

Defendant has argued that, notwithstanding the *Greenwood* holding, he had a reasonable expectation of privacy in his trash because (1) the trash was placed for collection within the curtilage of his property, (2) he used a private trash hauler, and (3) the private trash hauler disposed of the trash in its own landfill. The uncontroverted evidence was that defendant placed his garbage on his tree lawn for trash collection. Even if his tree lawn was within the curtilage of his property, as defendant has asserted, it was still an area that was readily open to public inspection within the meaning of *Greenwood, supra.* The tree lawn was accessible to any passerby on the public street. Moreover, the fact that a private trash hauler collected the trash and disposed of it in its own landfill did not give defendant a reasonable expectation of privacy in his garbage. The garbage, while on his tree lawn, was open to public inspection regardless of whether a private or municipal garbage collector hauled the trash away. See *State v. Payne* (1995), 104 Ohio App.3d 364, 367, 662 N.E.2d 60, 61–62. In addition, once the trash was in the private landfill, the owner of that landfill could have permitted anyone to sort through that trash. See *Greenwood,* 486 U.S. at 40, 108 S.Ct. at 1628–1629, 100 L.Ed.2d at 37. Defendant did not have a reasonable expectation of privacy in his trash. The trial court, therefore, correctly denied his motion to suppress evidence seized from his residence as being fruit of an illegal search of his trash.

■ Second, defendant has argued that the trial court incorrectly denied his motion to suppress evidence seized from his pickup truck, including the gun that was the basis for the firearm specification. During their search of the Royal Corona Lounge pursuant to a warrant, the police conducted a warrantless search of defendant's pickup truck that was parked in the vicinity of the lounge. The officer who conducted the search found a revolver on the floor while he was looking for evidence of gambling activity. Defendant was under arrest and in police custody at the time of the search.

Defendant moved the trial court to suppress evidence seized from his truck, arguing that the search did not fall within any of the exceptions to the warrant requirement. The court denied the motion on August 3, 1995, on the alternative grounds that the search fell within both the automobile and plain view exceptions to the warrant requirement.

■ The automobile exception permits police to conduct a warrantless search of a vehicle if there is probable cause to believe that it contains contraband or other evidence of a crime and exigent circumstances necessitate a search or seizure. *State v. Mills* (1992), 62 Ohio St.3d 357, 367, 582 N.E.2d 972, 982–983,

citing *Chambers v. Maroney* (1970), 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428. The mobility of the vehicle normally creates the exigent circumstances that justify an immediate search or seizure. *Mills* at 367, 582 N.E.2d at 982–983. In this case, the police were justified in searching a vehicle that they suspected defendant had used while he conducted the affairs of the enterprise before it could be removed and the evidence destroyed. The fact that defendant was in police custody at the time of the search is not significant. Someone other than defendant could have removed the truck before a search pursuant to a warrant could have been conducted.

The police had probable cause to search the truck. An officer has probable cause to search a vehicle if, based on the totality of the circumstances, there was a fair probability that contraband or evidence of a crime would be found in it. *State v. Denune* (1992), 82 Ohio App.3d 497, 507, 612 N.E.2d 768, 774. The officer who conducted the search of defendant's pickup truck testified at the suppression hearing of July 24, 1995, that he had observed defendant driving the truck, on the day of the search, to several locations where he regularly stopped and picked up betting slips. Based on this observation, it was reasonable for the officer to believe that defendant's pickup truck contained evidence of his gambling activities.[7]

The trial court correctly denied defendant's motion to suppress evidence seized during the search of his pickup truck and residence. Defendant's sixth assignment of error is overruled.

### III

Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and REECE, J., concur.

---

7. Since this court has concluded that the search of defendant's pickup truck fell within the automobile exception to the warrant requirement, it will not consider whether it was also justified by the plain view exception.