This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, Ruben Barkley, has appealed from his conviction for one count of aggravated robbery, one count of abduction, two firearm specifications, and two repeat violent offender specifications. We affirm in part and reverse in part.
On March 30, 2000, Defendant was indicted on one count of aggravated robbery, in violation of R.C. 2911.01(A)(1); and one count of abduction, in violation of R.C. 2905.02(A)(2). On August 17, 2000, the indictment was amended to add a firearm specification to each count and to add a repeat violent offender specification to each count. Following a trial to the bench, Defendant was found guilty of all counts and sentenced accordingly. Defendant timely appealed and has raised three assignments of error for review. They will be addressed concurrently for ease of review.
 ASSIGNMENT OF ERROR I The conviction of [Defendant] for the charge[s] of aggravated robbery and abduction in this case [are] against the manifest weight of the evidence and should be reversed[.]
 ASSIGNMENT OF ERROR II The trial court incorrectly denied [Defendant's] motion for acquittal in violation of Criminal Rule 29; specifically, there was not sufficient evidence to prove the offense[s] of aggravated robbery and abduction beyond a reasonable doubt[.]
 ASSIGNMENT OF ERROR III It was prejudicial error for the trial court to convict [Defendant] of repeat violent offender specification[s] absent proof beyond a reasonable doubt[.]
 In his three assignments of error Defendant has argued that his convictions for abduction and aggravated robbery were insufficient as a matter of law and against the manifest weight of the evidence. He has further argued that his convictions for two gun specifications and two repeat violent offender specifications were insufficient as a matter of law. We agree in part.
The function of an appellate court on review is to assess the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In making this determination, a reviewing court must view the evidence in the light most favorable to the prosecution. Id.; State v. Feliciano (1996), 115 Ohio App.3d 646, 652.
While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion.State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In making this determination, we do not view the evidence in the light most favorable to the prosecution. Instead, we must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. This action is reserved for the exceptional case where the evidence weighs heavily in favor of the defendant. Id. "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis sic) State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4.
Defendant was charged with aggravated robbery under R.C. 2911.01(A)(1) which states:
 No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]
 Defendant was also charged with abduction under R.C. 2905.02(A)(2) which states: "No person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear[.]" While Defendant's conviction for aggravated robbery was supported by sufficient evidence, it was against the manifest weight of the evidence. However, Defendant's conviction for abduction was supported by the manifest weight of the evidence and, thus, was sufficient as a matter of law.
At trial the evidence established that the victim, Daniel Burch, ran a gambling business out of his home. This was supported by several witnesses who indicated that Mr. Burch kept a carpet and dice in his kitchen for gambling purposes. Additionally, testimony was presented that Mr. Burch phoned a friend, Melissa Hargrove, to come and keep score for the game.
Ms. Hargrove testified that she had been involved with Mr. Burch and his gambling activities for at least the past nine to ten years and that she frequently kept score for such events. Two days before the incident in question, Mr. Burch had spoken to Ms. Hargrove and told her that a gamble would be happening. He said that he would page her when she needed to come over. When she arrived at Mr. Burch's home on the day in question following Mr. Burch's page, Defendant and Raymond Herring, the codefendant, had not yet arrived. When they arrived she indicated that Mr. Burch greeted the men as if he knew them, and they walked into the house unobstructed. Ms. Hargrove then departed to obtain alcohol for Mr. Herring at Mr. Burch's direction.
Defendant and Mr. Herring testified that they went to Mr. Burch's home to gamble in order to recoup gambling losses Defendant owed to Mr. Burch from previous gambling activities. Defendant and Mr. Burch played craps. Mr. Herring rolled the dice for Defendant. Following the conclusion of the gambling activity, Mr. Burch was found to be short of funds to cover the amounts now owed to Defendant. The evidence established that Mr. Burch placed a call to his brother's store and spoke with his brother's girlfriend, Diane Roebuck, who runs the store. He asked her to bring him ten thousand dollars. Ms. Roebuck testified that while on the phone with Mr. Burch she overheard someone in the background say "you made me come all the way down here and you ain't got the money to match[.]" When Ms. Roebuck told Mr. Burch that she did not have that much money available, she was told by Mr. Burch to bring all the cash that she had on hand at the store. Ms. Roebuck testified that it was not unusual for Mr. Burch to request large sums of money from the store.
Ms. Hargrove testified that when she returned to the house she heard a shot fired and she ran to call the police. When the police arrived they found Mr. Burch handcuffed. Mr. Burch testified that Defendant and Mr. Herring aimed guns at him and demanded that he give them money. He further claimed that he gave them three thousand, one hundred dollars that he had in his pocket. Neither Defendant nor Mr. Herring had this money on them when they were searched following their arrest.
The only testimony presented at trial to establish that a theft was committed was that given by Mr. Burch. Unfortunately, Mr. Burch's testimony at trial was frequently less than truthful. While the evidence is overwhelming that Mr. Burch actively participated in gambling activity at his home and, in fact, arranged to gamble on the day in question, he alleges that he did not gamble with Defendant or Mr. Herring. In fact, he urges the court to believe that he did not know Defendant or Mr. Herring, but yet when these two strangers arrived at his home he willingly allowed them to walk in the front door, a door that is fortified for safety purposes, because he did not wish to be rude.
Mr. Burch's testimony is also riddled with statements of actions he took while handcuffed which are physically improbable if not impossible. He testified that while his hands were cuffed behind his back he removed a large wad of cash from his front pants pocket. Additionally, he testified that, while handcuffed, he dialed a phone and spoke into the receiver. He specifically testified that he remembered speaking into the ear piece and not using the speaker phone. He attempted to bolster this testimony by stating that Ms. Roebuck asked if he was in trouble and he said yes, and then she asked if he needed the police, to which he responded yes. However, when confronted with the physical impossibility of dialing a phone and holding a receiver with your hands cuffed behind your back, he then indicated that maybe he had been on the speaker phone. Ms. Roebuck did not testify that Mr. Burch requested that she summon the police.
Mr. Burch's testimony regarding the sequence of events is specious in that he often changed the order in which things happened and the time that elapsed. Additionally, he changed his story on the stand several times. When cross-examined about the flaws in his testimony he indicated that he had very little memory of what actually happened that day. However, when it suited his purposes he was able to fill in minute details.
In contrast, Defendant and Mr. Herring have consistently told the same story. They allege that they were at Mr. Burch's residence to gamble. This statement is supported by the statements of Ms. Hargrove. They further allege that Mr. Burch lost money during the gaming. This statement is corroborated by the testimony of Ms. Roebuck as mentioned above. Finally, they allege that Mr. Burch and Ms. Hargrove acted together to steal a satchel in which Defendant kept his gambling money. This story is buoyed by the fact that all the parties testified that Defendant had such a satchel when he arrived, but when the police searched the house, Defendant, and Mr. Herring, the satchel was not located. Defendant and Mr. Herring stated that Mr. Burch was handcuffed after he attacked them. The evidence further established that he was kept handcuffed while they waited for Ms. Hargrove to return with their money.
The testimony at trial established that Defendant and Mr. Herring handcuffed Daniel Burch, the victim, after a dispute arose concerning money owed from a gambling debt. Officer Rodney Sherman testified that when Mr. Burch exited the house he was bleeding from his forehead and looked wide-eyed and fearful. Defendant does not refute that he and Mr. Herring handcuffed Mr. Burch. In fact, the only dispute that exists is why Mr. Burch was handcuffed. Upon review of the evidence presented, the conviction for abduction was not against the manifest weight of the evidence, and, therefore, there was sufficient as a matter of law.
This Court notes that as indicated above, holding Mr. Burch in order to wait for the return of Ms. Hargrove does constitute abduction and is, therefore, illegal. Additionally the gambling activity engaged in by the parties, while not charged as a crime, was illegal. However, the manifest weight of the evidence does not indicate that Defendant was guilty of aggravated robbery because there is no credible evidence to establish that a theft was attempted or committed. Therefore, justice requires that the conviction for aggravated robbery be reversed and a new trial ordered.
Defendant has finally argued that his conviction for the firearm specifications and the repeat violent offender specifications were based upon insufficient evidence as a matter of law.[1] We disagree in part.
R.C. 2929.14(D)(1)(a)(ii) states that the sentence shall be enhanced where the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. R.C. 2941.149
sets forth the requirements for a repeat violent offender specification. It indicates that "repeat violent offender" is defined in R.C. 2929.01
which states that:
 (DD) "Repeat violent offender" means a person about whom both of the following apply:
 (1) The person has been convicted of or has pleaded guilty to, and is being sentenced for committing, for complicity in committing, or for an attempt to commit, aggravated murder, murder, involuntary manslaughter, a felony of the first degree other than one set forth in Chapter 2925. of the Revised Code, a felony of the first degree set forth in Chapter 2925. of the Revised Code that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person, or a felony of the second degree that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person.
(2) Either of the following applies:
 (a) The person previously was convicted of or pleaded guilty to, and served a prison term for, any of the following:
 (i) Aggravated murder, murder, involuntary manslaughter, rape, felonious sexual penetration as it existed under section 2907.12 of the Revised Code prior to September 3, 1996, a felony of the first or second degree that resulted in the death of a person or in physical harm to a person, or complicity in or an attempt to commit any of those offenses;
 (ii) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense listed under division (DD)(2)(a)(i) of this section and that resulted in the death of a person or in physical harm to a person.
 (b) The person previously was adjudicated a delinquent child for committing an act that if committed by an adult would have been an offense listed in division (DD)(2)(a)(i) or (ii) of this section, the person was committed to the department of youth services for that delinquent act, and the juvenile court in which the person was adjudicated a delinquent child made a specific finding that the adjudication should be considered a conviction for purposes of a determination in the future pursuant to this chapter as to whether the person is a repeat violent offender.
 (Emphasis added.) Upon review of the evidence presented at trial, and viewing said evidence in a light most favorable to the prosecution, the gun specification on the abduction charge is supported by sufficient evidence under law, but the repeat violent offender specification on said charge is not.
Officer Sherman testified that when he arrived on the scene he observed Defendant with his hands behind his back as if concealing something. Following Defendant's arrest the police searched the house. During this search they found a Glock .40 located in the kitchen where Defendant had been. Mr. Burch testified that Defendant had pointed an automatic pistol at him.[2] Therefore, there was sufficient evidence to support the firearm specification.
As evidence that Defendant was a repeat violent offender, the State offered into evidence certified copies of convictions for voluntary manslaughter and aggravated robbery. Such evidence is sufficient to sustain the portion of the definition under R.C. 2929.01(DD)(2)(a)(i). However, the State failed to prove the first part of the definition which requires that Defendant must have been:
 convicted of or has pleaded guilty to, and is being sentenced for committing, for complicity in committing, or for an attempt to commit, aggravated murder, murder, involuntary manslaughter, a felony of the first degree other than one set forth in Chapter 2925. of the Revised Code, a felony of the first degree set forth in Chapter 2925. of the Revised Code that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person, or a felony of the second degree that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person.
 R.C. 2929.01(DD)(1). Abduction is a third degree felony and does not otherwise meet this first part of the definition of a repeat violent offender. Accordingly, the conviction for the repeat violent offender specification on the charge of abduction was insufficient as a matter of law.
Defendant's first assignment of error is sustained in part and overruled in part. Defendant's second assignment of error is overruled. Defendant's third assignment of error is sustained in part. The judgment of the trial court is affirmed in part and reversed in part and the cause is remanded for a new trial on the charge of aggravated robbery.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed equally to both parties.
Exceptions.
______________________________________ LYNN C. SLABY
BATCHELDER, P.J. CONCURS
[1] Since we have reversed the conviction for aggravated robbery and ordered that Defendant be granted a new trial, we decline to address any specifications that were attached to that offense. Accordingly, our review shall be limited to the specifications attached to the abduction offense only.
[2] While this Court has previously discounted the credibility of Mr. Burch's testimony under the manifest weight challenge, when reviewing the sufficiency of the evidence, this Court does not weigh the credibility of the witnesses and instead looks at the evidence in the light most favorable to the prosecution. State v. Feliciano (1996),115 Ohio App.3d 646, 652.