JOURNAL ENTRY and OPINION
{¶ 1} Appellant Anthony White appeals from his conviction and sentence for aggravated robbery with prior conviction, repeat violent offender, and one and three-year firearm specifications. On appeal, he assigns the following errors for our review:
 {¶ 2} "I. Evidence presented was insufficient to support the repeat violent offender specification and notice of prior conviction specification."
 {¶ 3} "II. Appellant [sic] aggravated robbery conviction was against the manifest weight of the evidence."
 {¶ 4} "III. Appellant was denied a fair trial as a result of the prosecutor's statements during cross-examination of Mr. White which constituted prosecutorial misconduct."
 {¶ 5} "IV. The trial court improperly sentenced appellant to the maximum sentence for aggravated robbery where the record does not support the court's findings pursuant to R.C. 2929.14(C)."
 {¶ 6} Having reviewed the record and pertinent law, we affirm the judgment of the trial court. The apposite facts follow.
 {¶ 7} The record reflects the Grand Jury indicted White for one count of aggravated robbery. In substance, the charge alleged White, in attempting or committing a theft offense, had a firearm and either displayed the weapon or brandished it.
 {¶ 8} At White's jury trial, Timothy Gray testified on October 1, 2002, at approximately 6:00 A.M., he arrived for work and parked his car on the third level of a parking garage located on Chester Avenue in Cleveland, Ohio. He proceeded down the stairwell from the third floor. Upon reaching the second floor, a black male entered the stairwell in front of him. The black male was later identified as Anthony White. Gray stated upon reaching the ground floor, White turned and faced him. He said White had something wrapped in a black rag. White pointed the object at Gray and demanded all his money. Gray gave White everything he had in his pockets. Thereafter, White asked what was in the bag he was carrying, but before Gray responded, another male walked into the stairwell. The second male was later identified as Curtis Stradford. Stradford asked what was happening, and White turned toward Stradford, said something to him, and ran out the door.
 {¶ 9} Gray stated he told Stradford he had been robbed and the two walked to the Wyndham Hotel where Gray called the police. When the police arrived, Gray described his assailant.
 {¶ 10} Within minutes after taking the report, the police spotted a male matching the description of the suspect walking near the Greyhound bus station, located a few blocks from where the robbery took place. When the officer spotted the male, he was walking near Stradford. The police took both men to the Wyndham Hotel and Gray identified White as the individual who robbed him.
 {¶ 11} Stradford testified he walked into the stairwell where he saw White and the victim, and as he approached, White poked him with an object wrapped in the black cloth. He further testified he knew White. White owed him $30 for drugs he had given him the night before the robbery.
 {¶ 12} White testified he had nothing to do with the robbery. He stated the police stopped him and Stradford after Stradford was attempting to sell him marijuana.
 {¶ 13} Following the trial, the jury found White guilty of aggravated robbery and guilty of a firearm specification. Afterwards, the trial court found White guilty of the remaining specifications. The trial court then sentenced White to a term of ten years on the aggravated robbery and three years on the merged firearm specification. The sentences were to be served consecutively. White now appeals.
 {¶ 14} In his first assigned error, White argues the evidence presented was insufficient to support the repeat violent offender specification and prior conviction specification.
 {¶ 15} The function of an appellate court on review is to assess the sufficiency of the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.[1] In making this determination, a reviewing court must view the evidence in the light most favorable to the prosecution.[2]
 {¶ 16} R.C. 2941.149 sets forth the requirements for a repeat violent offender specification. It indicates that "repeat violent offender" is defined pursuant to R.C. 2929.01 which states that:
 {¶ 17} "DD `Repeat violent offender' means a person about whom both of the following apply:
 {¶ 18} "(1) The person has been convicted of or has pleaded guilty to, and is being sentenced for committing, for complicity in committing, or for an attempt to commit, aggravated murder, murder, involuntary manslaughter, a felony of the first degree other than one set forth in Chapter 2925 of the Revised Code, a felony of the first degree set forth in Chapter 2925. of the Revised Code that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person, or a felony of the second degree that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person.
 {¶ 19} "(2) Either of the following applies:
 {¶ 20} "(a) The person previously was convicted of or pleaded guilty to, and served a prison term for, any of the following:
 {¶ 21} "(i) Aggravated murder, murder, involuntary manslaughter, rape, felonious sexual penetration as it existed under section 2907.12 of the Revised Code prior to September 3, 1996, a felony of the first or second degree that resulted in the death of a person or in physical harm to a person, or complicity in or an attempt to commit any of those offenses;
 {¶ 22} "(ii) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense listed under division (DD)(2)(a)(i) of this section and that resulted in the death of a person or in physical harm to a person.
 {¶ 23} "(b) The person previously was adjudicated a delinquent child for committing an act that if committed by an adult would have been an offense listed in division (DD)(2)(a)(i) or (ii) of this section, the person was committed to the department of youth services for that delinquent act, and the juvenile court in which the person was adjudicated a delinquent child made a specific finding that the adjudication should be considered a conviction for purposes of a determination in the future pursuant to this chapter as to whether the person is a repeat violent offender."
 {¶ 24} At trial, White requested the trial court bifurcate the repeat violent offender specification and prior conviction specifications from the underlying offense. The trial court informed White he had to stipulate to his prior convictions. Thereafter, White's defense counsel told the trial court to decide the issue. White now argues the record is devoid of evidence establishing a stipulation to his prior convictions. However, White testified in his own defense at trial and the following colloquy took place:
 {¶ 25} "Court: Hang on. Hang on. Your last conviction was for aggravated robbery in violation of Section 2911.02, with a firearm spec., and you were sentenced on February 10, 1989.
 {¶ 26} "White: Okay.
 {¶ 27} "Court: You were found guilty of a burglary and aggravated burglary, agg. felony of the first degree, and theft, felony of the fourth degree, on December 2, 1988.
 {¶ 28} "White: Okay.
 {¶ 29} "Court: So the last one was an aggravated robbery, and the one before that was a burglary.
 {¶ 30} "White: Okay."[3]
 {¶ 31} Regardless of White's argument concerning the stipulation, he admitted he had been convicted of aggravated robbery with a firearm specification, thus satisfying the statutory requirements of the RVO statute. Therefore, upon review of the evidence presented at trial, and viewing said evidence in a light most favorable to the prosecution, the trial court's findings of both the repeat violent offender and the prior conviction specifications are supported by sufficient evidence under law; accordingly, White's first assigned error is overruled.
 {¶ 32} In his second assigned error, White argues his aggravated robbery conviction was against the manifest weight of the evidence.
 {¶ 33} The test for sufficiency requires a determination of whether the state has met its burden of production at trial; a manifest weight challenge questions whether the state has met its burden of persuasion.[4] In making this determination, we do not view the evidence in the light most favorable to the prosecution. Instead, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.[5]
 {¶ 34} White was charged with aggravated robbery pursuant to R.C. 2911.01(A)(1), which states:
 {¶ 35} "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 36} After careful review of the record, we are unable to conclude that the trier of fact lost its way and created a manifest miscarriage of justice. Both the victim and Stradford identified White as the robber. The victim stated "I just noticed the way he was dressed, that at first I thought he might be someone who worked there, because he had on sort of a work shirt. It was unbuttoned almost all the way down. He had kind of a puffy black jeans tucked into combat boots and a rat tail in the back of his hair. As I was following him down the steps, I could see that he had a tail."[6] Based on this description, the police officers apprehended White in the immediate vicinity of the robbery, wearing everything described except the work shirt, which they later recovered nearby.
 {¶ 37} Additionally, Stradford testified he had no doubt the robber was the appellant. The following colloquy took place:
 {¶ 38} "Q. You called him ponytail. Why is that?
 {¶ 39} "A. Because back in the summer he had a low haircut, you could say, real bald, and had a ponytail in the back. That's why we used to call him ponytail."[7]
 {¶ 40} Although the gun was not recovered, the victim testified the object wrapped in a black cloth that the assailant pointed at him, looked like a gun and had the outline of a gun.[8]
 {¶ 41} Stradford also testified when he came upon the robbery in progress, the assailant stuck the object wrapped in the aforementioned black cloth in his chest. The following colloquy took place:
 {¶ 42} "Q. You said he stuck something in you. What did that feel like?
 {¶ 43} "A. Honestly, it felt like a pistol to me.
 {¶ 44} "Q. You ever been around a gun in your life?
 {¶ 45} "A. Yeah. I have been around a gun several times in my life; one, United States Army; two, my grandfather used to hunt, before he died, and when I used to live in Georgia, I owned my own two pistols.
 {¶ 46} "Q. You ever feel a gun before?
 {¶ 47} "A. I felt a gun, yeah. I felt a gun here in Cleveland.
 {¶ 48} "Q. All right. But this, to you, felt like he had just stuck a gun in you.
 {¶ 49} "A. Yeah.
 {¶ 50} "Q. Could it have been a finger?
 {¶ 51} "A. No. Fingers don't feel like that.
 {¶ 52} "Q. This felt like a gun?
 {¶ 53} "A. It was hard."[9]
 {¶ 54} Although White disputes he robbed the victim, we refrain from overturning the verdict because the jury chose to believe one version of events as opposed to another. When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution's testimony.[10] Accordingly, White's second assigned error is overruled.
 {¶ 55} In White's third assigned error he contends he was denied a fair trial as a result of the prosecutor's statements during cross-examination.
 {¶ 56} The test for prosecutorial misconduct is whether the remarks made by the prosecutor were improper and, if so, whether the remarks prejudicially affected substantial rights of the accused.[11] In making this determination, an appellate court should consider (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.[12]
 {¶ 57} A prosecutor has a duty to avoid making comments deliberately aimed at misleading the jury and to refrain from discussing matters not supported by admissible evidence.[13] However, isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning.[14] If every remark made by counsel outside of the testimony were grounds for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced of counsel are occasionally carried away by this temptation.[15]
 {¶ 58} We cannot say the isolated comment made by the prosecutor during cross-examination deprived White of a fair trial. During cross-examination, the prosecutor and White had the following exchange:
 {¶ 59} "Q. Do you know what this is (indicating)? This is your rap sheet. And the reason it is so short is because I didn't print out the sentences. I'm having trouble controlling myself, with you insulting the jury in this manner.
 {¶ 60} "Mr. Defranco: Objection.
 {¶ 61} "Court: Overruled.
 {¶ 62} "Q. You were convicted by a jury of aggravated robbery. You took it to trial, and you were convicted. You were convicted of that with a gun specification. You just told us some story about an incident that didn't even involve a gun.
 {¶ 63} "A. True.
 {¶ 64} "Q. An aggravated burglary. You were convicted of that, of breaking into somebody's house, stealing from them, and beating them up.
 {¶ 65} "A. Huh-uh."[16]
 {¶ 66} White complains that the prosecutor's comments prejudiced the jury. However, we look to the entire record and conclude there is overwhelming evidence of White's guilt. White's third assigned error lacks merit.
 {¶ 67} Finally, White contends in his fourth assigned error the trial court improperly sentenced him to the maximum sentence for aggravated robbery where the record does not support the court's findings pursuant to R.C. 2929.14(C).
 {¶ 68} The law is well-settled that we will not reverse a trial court on sentencing issues unless the defendant shows by clear and convincing evidence that the trial court has erred.[17]
 {¶ 69} A sentencing court may only impose a maximum term of imprisonment upon a previously imprisoned offender "who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."[18] The trial court must state these findings on the record at the time of sentencing.[19]
 {¶ 70} In addition to findings, the trial court must give its reasons for imposing a maximum sentence.[20] Reasons are the trial court's bases for its findings which evince its adherence to the General Assembly's policies of establishing consistency in sentencing and curtailing maximum sentences.[21]
 {¶ 71} A review of the record reveals the trial court complied with the statutory requirements for imposing a maximum sentence. The trial court first found White posed the greatest likelihood of committing future crimes. Then, the trial court reasoned White committed the present crime while on post-release control. Additionally, White admitted to using drugs shortly after being released from prison for his prior conviction. Overall, White's prior criminal record showed he had not responded well to incarceration or any of the imposed sanctions.[22] Accordingly, White's fourth assigned error is overruled.
 {¶ 72} The judgment is affirmed.
Judgment affirmed.
 Cooney and McMonagle, JJ., concur.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[2] Id.; State v. Feliciano (1996), 115 Ohio App.3d 646,652.
[3] Tr. at 235.
[4] State v. Thompkins 78 Ohio St.3d 380, 390, 1997-Ohio-52.
[5] State v. Otten (1986), 33 Ohio App.3d 339, 340.
[6] Tr. at 98.
[7] Tr. at 201.
[8] Tr. at 102.
[9] Tr. at 199-200.
[10] State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757.
[11] State v. Smith (1984), 14 Ohio St.3d 13, 14.
[12] State v. Braxton (1995), 102 Ohio App.3d 28, 41.
[13] State v. Lott (1990), 51 Ohio St.3d 160, 166.
[14] State v. Hill (1996), 75 Ohio St.3d 195, 204.
[15] State v. Maurer (1984), 15 Ohio St.3d 239, 267.
[16] Tr. at 245.
[17] R.C. 2953.08(G)(1); State v. Hollander (July 5, 2001), Cuyahoga App. No. 78334; State v. Haamid (June 21, 2001), Cuyahoga App. No. 78761.
[18] R.C. 2929.14(C).
[19] See State v. Edmonson (1999), 86 Ohio St.3d 324.
[20] R.C. 2929.19(B)(2)(d).
[21] See R.C. 2929.11 et seq.; see, also, Edmonson.
[22] Tr. at 337.