DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Guy Iarussi and Paul C. Mullin appeal from the judgment of conviction and sentence issued against each of them by the Lorain County Court of Common Pleas. This court affirms in part and reverses in part.
 I.
In 1996, Guy Iarussi and Paul Mullin organized a business called Casino Equipment Rental, Inc. ("CER"). The business was established to operate gambling events on behalf of charitable organizations in order to raise money for the charities. The charities entered into agreements with the defendants that CER would provide equipment, personnel, and promotional services in connection with the fundraising gambling event. Sometimes the employees of the CER worked with volunteers from the sponsoring charitable enterprise to staff the gambling event. At other times, CER employees worked the event alone. CER provided dealers to operate the games themselves. The dealers were paid an hourly salary, and the defendants received an hourly fee for supervising the dealers. The agreements provided that CER would receive either a fixed amount or a percentage of the gambling take after expenses. Sometimes the defendants collected the gambling money during the course of the event, and retained their percentage or set fee, and turned over the balance to the sponsoring organization. On other occasions, the charitable organization retained the funds and paid defendants and CER at the end of the event.
In 1997, Daniel Suster contacted the defendants asking them to assist in a charitable event to be held in Lorain, Ohio on January 1, 1998. The event was raided by the Lorain police department. On November 24, 1998, a grand jury indicted the defendants on one charge of engaging in a pattern of corrupt activity, pursuant to Ohio's RICO statute R.C. 2923.32, based on the collection of an unlawful debt as defined by R.C. 2923.32(A)(1). The indictment explained that the unlawful debt was either (1) the collection of the bets themselves, or (2) the gambling monies owed to the charity by the CER dealers. Mullin was also indicted on three first-degree misdemeanors, related to conducting an illegal game of chance in violation of R.C. 2915.02, in connection with the January 1, 1998 game. Iarussi was indicted on sixty-two first-degree misdemeanor charges, related to illegal gambling, none of which involved the January 1, 1998 game in Lorain. The Iarussi indictment did not state where the charged misdemeanors took place.
The defendants ultimately signed a stipulated statement of facts, which incorporated "all discovery, the indictment, and the bill of particulars." The defendants pled no contest to the facts as stipulated. Both defendants were sentenced to community control, and Iarussi was sentenced to six months of incarceration in Lorain County Correctional Facility. The defendants appealed, assigning five errors, two of which relate solely to Iarussi. We have rearranged the assignments of error for ease of discussion.
 II. ASSIGNMENT OF ERROR NO. 1 The Court erred by finding the stipulated facts presented to the court were sufficient to charge the [Appellants] with violating Ohio's RICO statute [R.C.] 2923.32, and therefore violated the [Appellants'] rights to Due Process and Fair Trial, as guaranteed under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Section 16 of Article I of the Ohio Constitution.
Appellants claim that the evidence as stipulated was insufficient to convict them of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32. When an appellate court reviews for the sufficiency of the evidence, it views the evidence presented in the light most favorable to the prosecution and asks whether the evidence, if believed, would permit a rational trier of fact to find that the prosecution had proved each element of the offense beyond a reasonable doubt. See State v.Jackson (1992), 82 Ohio App.3d 667, 671; State v. Gasser (1993),89 Ohio App.3d 544, 547, citing State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
The prosecution was required to prove beyond a reasonable doubt the following elements of engaging in a pattern of corrupt activity: that the defendants (1) were employed by, or associated with, any enterprise, (2) conducted or participated in, directly or indirectly, the affairs of the enterprise (3) through the collection of an unlawful debt. R.C. 2923.32(A). An unlawful debt is defined as "money or other thing of value constituting principal or interest of a debt that is legally unenforceable in this state in whole or in part because the debt was incurred or contracted in violation of any federal or state law relating to the business of gambling activity." R.C. 2923.31(I). The collection of an unlawful debt is a felony. R.C. 2923.32(B)(1).
Appellants argue that there was no factual basis for the unlawful debt collection element. It was never alleged that the bettors waged on credit. Appellants thus argue that they never attempted to collect a "debt" from the bettors. The State argues that the mere passing of cash from the bettors to appellants constituted the enforcement of an unlawful debt, "if the gambling activity is not sanctioned by [R.C] 2915.02(D)(2)." This court disagrees. If the legislature had intended to define an unlawful debt as any transaction related to a gambling activity, the legislature could have so defined the term. It has not done so. Rather, the legislature has defined the term unlawful debt as money owed rather than a cash transaction. See R.C. 2923.31(I). The cash transactions between the bettors and the appellants/dealers were illegal only because the appellants profited from a charitable gambling operation, which the legislature made a first-degree misdemeanor. Had the legislature intended to make the cash transactions at issue here a felony, it could have done so.
The State also argues that when the dealers collected the wagers and paid the proceeds to the charities, this activity involved "illegal gambling monies owed to the charity (unlawful debt) from the dealers on behalf of the charity sponsoring the event." In response, appellants point to a case cited by the State and decided by this court, State v.Feliciano (1995), 115 Ohio App.3d 646, where there was evidence that bettors were actually extended credit by the enterprise. In Feliciano,
this court agreed with the proposition that "transmission of money within an organization, regardless of that organization's legality, does not constitute collection of a debt." Id. at 654, citing United States v.Giovanelli (C.A.2, 1991), 945 F.2d 479, 490. We are not persuaded to change our view given the instant facts.
We sustain appellants' first assignment of error. Because there was legally insufficient evidence to support the convictions for engaging in a pattern of corrupt activity in violation of R.C. 2923.32, we reverse appellants' convictions on this charge.
 III. ASSIGNMENT OF ERROR NO. 2 The Court erred by finding the Stipulated Facts provided to the Court were sufficient to charge the Appellants with violation of the Gambling Statute [R.C.] 2915.03, wherein the statute as presently enacted is vague and ambiguous as it relates to the operation of charitable gambling events by not defining reasonable and necessary expenses, thus, violating the [Appellants'] rights to Due Process and Fair Trial, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Section 15 of Article I of the Ohio Constitution.
The remaining misdemeanor charges are either violations of R.C.2915.02(A)(2), promoting a scheme or game of chance conducted for profit, or violations of R.C. 2915.03(A)(1), using premises owned, leased, or controlled by the defendant for gambling in violation of R.C.2915.02.[1]
We first note that the assigned error is that R.C. 2915.03 is unconstitutionally vague. However, that section of the Revised Code deals with the operation of a gambling house. It appears that appellants intend to challenge R.C. 2915.02, which prohibits promoting a scheme or game of chance for profit, unless that scheme or game is operated by a charitable organization and all of the proceeds after the payment of winnings are paid to the charity.
Appellants assert that R.C. 2915.02 is an unconstitutional exercise of police power. All statutes are presumed constitutional and the party challenging a statute's constitutionality bears the burden of proving otherwise by clear and convincing evidence. State v. Posey (1988),40 Ohio St.3d 420 424-425, citing Kadrmas v. Dickinson Pub. Schools
(1988), 487 U.S. 450, 457-458, 101 L.Ed.2d 399, 409. Because the instant statute implicates no suspect classification, the proper review is whether the law is "rationally related to a legitimate state interest."Id., at 424, citing Cleburne v. Cleburne Living Center (1985),473 U.S. 432, 440, 87 L.Ed.2d 313, 320.
Appellants claim that the law does not bear a substantial relation to the purpose of controlling gambling. However, appellants' argument primarily focuses on the burden the statute imposes on their right to contract, and the burden imposed on charitable organizations, requiring the charities to conduct the charitable gambling events entirely on their own. This argument is without merit. "[A]lmost every exercise of the police power will necessarily interfere with the enjoyment of liberty or the acquisition or possession of property." State v. Thompkins (1996),75 Ohio St.3d 558, 560.
Here, the legislature clearly intended to outlaw operating games of chance for profit. The legislature enacted a narrow exception for charitable organizations, which requires that no one profit from the gambling event, except the winners of the game and the charitable organization. Appellants have not provided clear and convincing evidence that the statute is an unconstitutional enactment of police power.
Appellants' second assignment of error is overruled.
 IV. ASSIGNMENT OF ERROR NO. V The Court erred by finding the Stipulated Facts provided the Court were sufficient to vest the court with venue to preside over Counts Two through Sixty-Three, all misdemeanor gambling offenses, charging Mr. Iarussi with crimes in Lorain County, which actually occurred in Ohio outside borderlines of Lorain County Ohio, violating Mr. Iarussi's rights to a proper venue under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 16 of Article I of the Ohio Constitution.
 ASSIGNMENT OF ERROR NO. III The Court erred by overruling [Mr. Iarussi's] Motion to Dismiss Counts Two, Three, Six, Seven, Twelve and Thirteen as they were properly subject to dismissal as mandated by [R.C.] 2901.13 Statute of Limitations, wherein the State failed to present sufficient facts to overcome the limitations as to these Counts, this error violated [Mr. Iarussi's] right to a Fair Trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 16 of Article I of the Ohio Constitution.
Appellant Iarussi challenges both the sufficiency of the evidence on all of his misdemeanor offenses, and the court's refusal to dismiss certain charges as filed beyond the two-year statute of limitations.
The fifth assignment of error challenges the sufficiency of the stipulated facts to prove beyond a reasonable doubt that the misdemeanor offenses occurred in Lorain County, as required by Section 16, Article I
of the Ohio Constitution and codified in R.C. 2901.12(A). Iarussi acknowledges that R.C. 2901.12(H) allows a trial for a course of criminal conduct in a given jurisdiction, so long as at least one of the criminal offenses occurred in that jurisdiction. However, he contends that none of the misdemeanor offenses were alleged to have occurred in Lorain County, and that the state has failed to prove venue beyond a reasonable doubt.
"[I]t is not essential that the venue of the crime be proved in express terms, provided it be established by all the facts and circumstances, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the affidavit." State v. Gribble
(1970), 24 Ohio St.2d 85, paragraph two of the syllabus. See, also, Statev. Vrona (1988), 47 Ohio App.3d 145, 150.
In the instant case, Iarussi signed a "Stipulated Statement of Facts" which incorporated by reference the indictment, the bill of particulars and "all discovery." Neither the stipulated statement of facts nor the indictment makes any reference to the location of the gaming events that gave rise to the various misdemeanor charges. The bill of particulars states that each count "pertains to" a certain charitable organization, but it does not state where each alleged gambling offense occurred. In response to Iarussi's motion to dismiss, the State appended copies of Iarussi's contracts with the various organizations. Many of the contracts listed the location of the gambling event, and all of those listed were in jurisdictions other than Lorain County. There is nothing in the stipulated facts that establishes that any of the gambling offenses occurred in Lorain County.
The State responds that Iarussi "stipulated to venue" and that at the plea hearing Iarussi stated he was only going to appeal the "unlawful debt" allegation and the constitutionality of R.C. 2915.02. However, the record does not support the prosecution's position. Iarussi stipulated only to the facts as described above, which did not include the location of the offenses. Consequently the State cannot benefit from the facts as stipulated to establish venue. At the plea hearing, the judge summarized that the defendants were pleading no contest and were going to raise "their issues" on appeal. Then Iarussi's counsel responded by stating that he intended to challenge the constitutionality of the gambling statute and the unlawful debt allegation. Iarussi did not waive any other issues that he might assign on appeal.
Because the State did not prove beyond a reasonable doubt that Iarussi committed the misdemeanor gambling offenses in Lorain County, the facts as stipulated are legally insufficient to establish venue beyond a reasonable doubt for the misdemeanor offenses. Iarussi's fifth assignment of error is sustained, and his convictions on counts two through sixty-three are reversed. Thus we overrule Iarussi's third assignment of error as moot.
 V. ASSIGNMENT OF ERROR NO. IV The Court abused its discretion and violated the intent of Senate Bill II, when it sentenced Mr. Iarussi to six months local jail time on the misdemeanor charge, ordered excessive fines and permitted property forfeiture, and erred when she failed to merge the gambling charges with running of a gambling house as presented in Appellants' Sentencing Memorandum which violated the [Appellants'] rights to be free from cruel and unusual punishment and upon [sic] as guaranteed by the Eighth, Sixth and Fourteenth Amendments to the United States Constitution and Section 16 of Article I of the Ohio Constitution.
Because of our disposition of assigned error number five, assignment of error four as it relates to Iarussi is rendered moot. As they relate to Mullin, the issues of excessive fines and property forfeiture are also moot, because these penalties relate to the RICO conviction, which we reversed.[2]
The issue of merger still remains as to Mullin. However, the appellate brief does not actually argue separately the issue of merger, as required by App.R. 16(A). Thus, we decline to address this issue, pursuant to App.R. 12(A)(2). We overrule the fourth assignment of error as it relates to Mullin.
 V.
We have sustained appellants' first assignment of error and reverse their convictions for engaging in a pattern of corrupt activities, in violation of R.C. 2923.32, because the convictions were not supported by legally sufficient evidence. We have overruled appellants' second assignment of error challenging the constitutionality of R.C. 2915.02. We have sustained appellant Iarussi's fifth assignment of error and we have reversed his sixty-two misdemeanor convictions because the convictions were based on legally insufficient evidence, given the State's failure to prove venue beyond a reasonable doubt. We have determined that our reversal of Iarussi's misdemeanor convictions renders moot his third assignment of error regarding the statute of limitations and his fourth assignment of error concerning the penalties imposed. We have overruled as moot Mullin's fourth assignment of error challenging the penalties imposed for the RICO conviction. We overruled Mullin's fourth assignment of error regarding merger of the misdemeanor offenses because this issue was not separately argued.
The judgment of the trial court is affirmed in part and reversed in part.
Judgment affirmed in part, and reversed in part.
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs in C.A. No. 00CA007554 taxed to Appellee.
Costs in C.A. No. 00CA007567 taxed to Appellant Mullin and Appellee equally.
Exceptions.
 ___________________________ WILLLIAM R. BAIRD
BATCHELDER, P. J., WHITMORE, J., CONCUR
[1] Am.Sub. S.B. No. 2 was enacted effective July 1, 1996, and made significant changes to the criminal code in Ohio. In the case of appellant Iarussi, a number of the misdemeanor gambling offenses allegedly occurred prior to July 1, 1996, and are governed by the law as enacted prior to that date. However, these changes do not bear upon the outcome of this case.
[2] As to the issue of property forfeiture, the grand jury determined that certain property was subject to forfeiture, pursuant to R.C.2923.32(B), which provides that the court can order forfeiture of property used or acquired in the pattern of corrupt activity.