DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Jason W. Darnell, appeals his conviction and sentence in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} Defendant was indicted on one charge of trafficking in drugs after a confidential informant working with the Richfield Police Department implicated him in a sale of crack cocaine. A jury found Defendant guilty, and the trial court sentenced him to a one-year prison term. Defendant timely appealed. His two assignments of error are consolidated for ease of disposition.
 ASSIGNMENT OF ERROR I "THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE THE STATE OF OHIO FAILED TO PROVE EACH AND EVERY ELEMENT OF THE CRIME OF TRAFFICKING IN COCAINE BEYOND A REASONABLE DOUBT." *Page 2 
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED WHEN IT OVERRULED A TIMELY DEFENSE MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AS THERE WAS NOT SUFFICIENT EVIDENCE PRESENTED BY THE STATE OF OHIO TO ESTABLISH A PRIMA FACIE CASE OF TRAFFICKING IN COCAINE TO WARRANT THE CASE BEING SUBMITTED TO THE JURY."
 {¶ 3} Defendant's assignments of error argue that his conviction for trafficking in cocaine is based on insufficient evidence and is against the manifest weight of the evidence. Defendant maintains that although testimony at trial placed him inside the residence where the transaction took place, it did not establish that he played a part in the sale.
 {¶ 4} When reviewing a trial court's denial of a motion to dismiss pursuant to Crim. R. 29, this Court assesses the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In making this determination, we must view the evidence in the light most favorable to the prosecution. Id.; State v. Feliciano (1996),115 Ohio App.3d 646, 653. "In essence, sufficiency is a test of adequacy." State v. Thompkins, 78 Ohio St.3d 380, 386.
 {¶ 5} A challenge to the weight of the evidence presents a different question. "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, this Court does not view the evidence in the light most favorable to the State, but: *Page 3 
 "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. Because sufficient evidence is required to take a case to the jury, the conclusion that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 6} R.C. 2925.03(A) and (C)(4) prohibit any person from selling or offering to sell cocaine. If the offense is committed in the vicinity of a juvenile, trafficking in cocaine is a felony of the third degree with a presumptive prison term. R.C. 2925.03(C)(4)(c).
 {¶ 7} Defendant's conviction is the result of a drug buy arranged by a confidential informant working with Detective Michael Swanson of the Richfield Police Department. Detective Swanson testified that Ron Kessler offered to cooperate with ongoing drug investigations after his own arrest on unrelated charges left him facing a probation violation. According to Detective Swanson, Kessler contacted Robert Leonhard on March 3, 2008, to arrange a drug purchase. Kessler made four calls to Leonhard's residence from a cellular phone in Detective Swanson's presence, and Detective Swanson monitored the conversations. He testified that during the final telephone call, the individual to whom Kessler spoke called out to another individual named "Jay." Based on his experience in previous drug investigations, Detective Swanson concluded that "Jay" was Defendant, whom he knew to use that nickname.
 {¶ 8} Detective Swanson testified that Kessler arranged to purchase a "teen," or a sixteenth of an ounce, of crack cocaine from Leonhard for $80. Detective Swanson provided *Page 4 
Kessler with an automobile, fitted him with a wire, and arranged to monitor the drug purchase from a nearby location. He testified that he watched as Kessler entered Leonhard's house, then clearly heard children's voices and pieces of conversation. Once again, he heard a female voice say, "Hey, Jay." Detective Swanson testified that Kessler was in Leonhard's residence for approximately five minutes, after which he rendezvoused with police and produced the crack cocaine. Detective Swanson obtained a warrant to search Leonhard's home and recovered traces of crack and powder cocaine in addition to paraphernalia related to drug trafficking. He acknowledged that confidential informants like Kessler are typically "crackheads" and that it was only through the further cooperation of Leonhard, whom he knew to be dealing drugs, that Defendant was implicated.
 {¶ 9} Ron Kessler's testimony supported that provided by Detective Swanson. Kessler admitted that he is a "recovering" cocaine addict and that he agreed to cooperate with the police in return for a possible reduction in his sentence on a probation violation. He recalled his phone calls to Leonhard and testified that he arranged to purchase a "teener" of crack cocaine at Leonhard's residence for $80. Kessler testified that he entered Leonhard's home through the kitchen, where he saw Defendant, a woman, and two children. He then completed the drug purchase with Leonhard in the living room. With regard to his cooperation with the investigation, Kessler acknowledged that he was "uneasy about *** kind of screwing over somebody I thought was a pretty stand-up guy[.]"
 {¶ 10} Ronald Leonhard testified that he agreed to cooperate with police after his arrest. He confirmed that Defendant had lived with him in his Richfield home in the past and that Defendant is known by the nickname "Jay." With respect to the March 3, 2008, transaction involving Kessler, Leonhard testified that he obtained the crack cocaine from Defendant, that *Page 5 
Defendant was present in the home at the time of the transaction, and that he was sure he gave the purchase money to Defendant after he received it from Kessler. Leonhard characterized himself as a "middleman" for Defendant and testified that he was willing to fill that role because he usually benefitted indirectly from the transaction:
 "Well, generally, they're in the party mood, you know, they want to party, so I'll party with them at their expense.
 "***
 "Generally people would stay around and smoke it, you know, rather than take it and dash, as you might say. Here's a little bit, I'll see you later, I'm taking off. No, it was more of a friendly atmosphere, more of a friendly camaraderie."
He also characterized Defendant as "a good guy" and "a friend."
 {¶ 11} Having reviewed the testimony presented at trial and the reasonable inferences that can be drawn therefrom, this Court cannot conclude that the jury lost its way in finding Defendant guilty of trafficking in cocaine. Kessler's and Leonhard's testimony placed Defendant in the residence when the transaction was completed and, according to Leonhard, Defendant was the source of the drugs and the recipient of the proceeds. Although both Leonhard and Kessler are admitted drug addicts who reluctantly cooperated with the investigation to advance their own interests, their testimony is consistent with one another and with the testimony of Detective Swanson and is credible. Defendant's conviction is not against the manifest weight of the evidence. Having reached this conclusion, it follows that his conviction is also supported by sufficient evidence. See Roberts at *2.
 {¶ 12} Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 6 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
LYNN C. SLABY FOR THE COURT
 WHITMORE, J. MOORE, P. J., CONCUR *Page 1