DECISION AND JOURNAL ENTRY
{¶ 1} Defendant/Appellant, Joshua Childress, appeals his conviction in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On April 28, 2008, Defendant was indicted on one count of failure to verify current address in violation of R.C. 2950.04, a third-degree felony; one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony; one count of aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1), a fifth-degree felony; and one count of possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a fourth-degree felony. Count one was severed from the other counts. Defendant pled guilty to counts three and four and was found guilty by a jury on count two. Defendant was sentenced to an aggregate term of two years of imprisonment. Defendant timely appealed and raises one assignment of error.
 Assignment of Error "The trial court committed reversible error when it denied [Defendant's] motion for judgment of acquittal under Criminal Rule 29." *Page 2 
 {¶ 3} In his sole assignment of error, Defendant argues that the trial court erred in denying his motion for acquittal under Crim. R. 29. Defendant also argues in the body of his argument, although he does not specifically assign it as error, that his conviction was against the manifest weight of the evidence.
 {¶ 4} We review the denial of a Crim. R. 29 motion by assessing the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. To make this determination, we view the evidence "in a light most favorable to the prosecution." Id. See, also,State v. Feliciano (1996), 115 Ohio App.3d 646, 653. "In essence, sufficiency is a test of adequacy." State v. Thompkins (1997)78 Ohio St.3d 380, 386.
 {¶ 5} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power may only be invoked in extraordinary circumstances if the evidence presented weighs heavily in favor of the defendant. Id. As sufficient evidence is required to take a case to the jury, a conclusion that a conviction is supported by the weight of the evidence *Page 3 
necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 6} Defendant was convicted of tampering with evidence in violation of R.C. 2921.12(A)(1), which states that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall *** [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"
 {¶ 7} Defendant concedes that he knew an investigation was in progress. His sole argument is that there was no evidence to establish that the evidence (an "eight ball" of methamphetamine) existed. Defendant maintains that a police officer's testimony in which he related what Defendant allegedly told him at time of arrest is not enough, especially since the baggy of drugs was never recovered at the hospital. We disagree.
 {¶ 8} Officer Adam Lemonier testified that he and his partner, Officer Todd Myers, went to Defendant's home on April 24, 2008, to execute a search warrant. Lemonier stated that Defendant and his mother (Pam Childress) lived at the same address and were "known players in the methamphetamine network." Lemonier explained that Pam Childress opened the door and after initially denying that Defendant was present, she allowed the officers into the home to look for Defendant. Lemonier stated that Myers found Defendant in a closet in the basement. Lemonier explained that Defendant did not resist arrest.
 {¶ 9} Lemonier testified that during the arrest, Defendant was nervous, sweating and "rambling real fast," and that Defendant told him that he needed to get to a hospital because he "swallowed an eight ball." Lemonier stated that Defendant told him that he ingested the drug by *Page 4 
tying it up in a baggy with a knot at the end, after which he "threw it down." Lemonier indicated that Defendant was "borderline freaked out" and insistent that he get to a hospital.
 {¶ 10} Lemonier testified that Defendant was transported to the hospital and was still agitated while "sipping down the charcoal milkshake" when Lemonier arrived. Lemonier stated that Defendant again admitted to swallowing the drugs while at the hospital.
 {¶ 11} Officer Brent Heller testified that he heard Defendant tell Lemonier that he had swallowed an eight ball of methamphetamine and that Defendant was sweating and "looking pretty rough." Heller explained that Lemonier asked Defendant questions to see if Defendant was just trying to get out of going to jail and that Defendant was adamant that he swallowed the drug and wanted to go to the hospital. Heller also testified that he was at the hospital with Defendant and heard Defendant tell the doctors that he had swallowed the drug. Heller stated that Defendant was sweating profusely, was twitching, had no color, and that the doctors decided to admit him to the hospital.
 {¶ 12} Heller identified Defendant's medical records and testified that Defendant's final diagnosis was "methamphetamine ingestion." Heller also referred to the hospital emergency room's "history of present illness," which indicated that Defendant stated "that he ingested the pack of the meth to try to avoid any charges *** [and] that the meth was wrapped in a baggy, which was tied off in a knot."
 {¶ 13} Heller acknowledged during cross-examination that Defendant's discharge summary stated that his vitals were normal, that his sensory perception and mobility were not impaired, and that Defendant's nutrition evaluation was excellent. Heller stated, however, that he did not believe that Defendant was exaggerating to get out of going to jail and noted that it would be unusual to admit to taking drugs if you did not do it. *Page 5 
 {¶ 14} Defendant testified that he did not have any drugs in his possession when he was arrested. Defendant also denied that he told the officers he had ingested drugs or that he wanted to go to the hospital. Defendant explained that as he was sitting in the paddy wagon, the police officers told him that his mother and girlfriend told the officers that he had swallowed an eight ball. Defendant stated that he denied this accusation to police officers but was transported to the hospital anyway. Defendant also denied telling hospital staff that he ingested drugs. Defendant testified that the police officers and medical staff are liars to the extent they have testified he told them he swallowed methamphetamine that day. Defendant also testified that the hospital staff told him they did not find the baggy of drugs in his stool.
 {¶ 15} Based on the foregoing, we hold that Defendant's conviction for tampering with evidence is not against the manifest weight of the evidence. It was within the jury's province to believe the State's witnesses who testified that Defendant had swallowed evidence. As we have stated, despite the fact that there is some conflicting evidence, "this Court will not disturb the jury's factual determinations because the jury is in the best position to determine the credibility of the witnesses during trial. In addition, this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the jury chose to believe certain witnesses' testimony over the testimony of others." State v. Fletcher, 9th Dist. No. 23838,2008-Ohio-3105, at ¶ 52, citing State v. Crowe, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, at ¶ 22. Because Defendant's conviction is not against the manifest weight of the evidence, it follows that it is based on sufficient evidence. See Roberts at *2.
 {¶ 16} Defendant's assignment of error is overruled.
 Judgment affirmed. *Page 6 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 MOORE, J. CARR, J. CONCUR. *Page 1